[Civ. No. 1736. Fifth Dist. Dec. 4, 1973.]

JOSEPHINE GABALDON et al., Plaintiffs and Appellants, v.
UNITED FARM WORKERS ORGANIZING COMMITTEE et al.,
Defendants and Respondents.

## COUNSEL

Rex H. Reed, Gall, Lane, Powell & Kilcullen, John L. Kilcullen, Gibson & Kennerson, Jonathan C. Gibson, Jacobus, Isham & Humpal, Frederic A. Jacobus and Richard B. Isham for Plaintiffs and Appellants.

Cohen, Farnsworth, Denison, Carder & Engelhardt, Cohen, Carder & Engelhardt and Stephen Engelhardt for Defendants and Respondents.

## OPINION

**BROWN (G. A.), P. J.**—Plaintiffs appeal from a judgment on the pleadings in favor of the defendants rendered on the ground their complaint does not state facts sufficient to constitute a cause of action.

A motion for judgment on the pleadings is treated identically to a demurrer. (*Welshans* v. *City of Santa Barbara* (1962) 205 Cal.App.2d 304, 305 [23 Cal.Rptr. 108].) Consequently, the facts alleged in the complaint must be assumed to be true and liberally construed in favor of the party against whom the motion is made. (*Gill* v. *Curtis Publishing Co.* (1952) 38 Cal.2d 273, 275 [239 P.2d 630]; *Semole* v. *Sansoucie* (1972) 28 Cal.App. 3d 714, 719 [104 Cal.Rptr. 897].)

The named plaintiffs are farm workers. The defendant United Farm Workers Organizing Committee (hereinafter "union") is an unincorporated labor organization; the other defendants are 26 major growers (hereinafter

"growers") of agricultural crops in the southern San Joaquin Valley. The plaintiffs commenced this class action on behalf of themselves and others similarly situated, alleging that on July 29, 1970, the union and growers entered into a collective bargaining agreement; they complain that some of the provisions of the contract, hereinafter summarized, have deprived the plaintiffs of their constitutional rights. It is alleged that the union is designated as the sole collective bargaining agent for the workers, although they do not represent a "majority or substantial portion of the agricultural workers including plaintiffs. . . ." It is further alleged that plaintiffs ". . . for several years have worked for and have been employed by defendant growers on terms and conditions freely arrived at between themselves and said growers while enjoying the freedom to work and contract individually with said defendant growers without restraint, obstruction, interference or hindrance from any source." The complaint continues that plaintiffs are required to work under the terms of the contract, among the requirements of which are four provisions of which they make special complaint. These in summary are:

(1) Membership in defendant union is a condition of employment with defendant growers and that the employees of the growers as of the date of the contract must become members of the union within seven days of the execution of the contract or suffer termination.[1]

(2) Whenever any grower requires workers he shall notify the union, which will use its best efforts to furnish the required workers; if unable to do so, the grower may then procure workers from other sources, but they too must become union members within seven days. The hiring clause of the contract provides referral priority in the order of (a) strikers, (b) the growers of prior employment, (3) new registrants.

(3) The union is given the right to require the grower to discharge any

---

[1] Union security provisions similar to the one here involved are often given different labels depending on the degree of union security provided. A "union shop" provision, for example, is one under which the employer is free to hire nonunion employees but they must become employees within a specified period of time. A "closed shop," on the other hand, is one under which all employees must be union members unless the union is unable to furnish workers. If the union is unable to furnish workers, the employer can get nonunion workers but only if they become union members before the work commences. (*Chavez* v. *Sargent* (1959) 52 Cal.2d 162, 177-178, fn. 4 [339 P.2d 801].) Appellant characterizes the agreement herein as a "full union shop" or one in between a "closed shop" and a "union shop." Regardless of the tag put on the clause of this collective bargaining agreement, it is basically a "union security provision" and is treated almost identically to the others. (See *Chavez, supra,* fn. 4.)

worker whom the union charges with antiunion activity when it presents to the employer written evidence of such activity. The worker is given the right to a hearing, but the union is granted the power to make the final decision with respect to the discharge.

(4) The grower is required to deduct or "check off" union initiation fees, dues and assessments from the employees' wages upon presentation of the individual authorization of the worker.

It is then alleged in substance that by virtue of the execution of the contract, defendant union and growers have and will continue to enforce the terms of this contract, in violation of plaintiffs' freedom of association, right to work, freedom to pursue the occupation of their choice, freedom of thought, freedom of political action, freedom from unwarranted invasion of their right to privacy and other fundamental rights and liberties in violation of their constitutional rights secured under the First, Fifth, Ninth and Fourteenth Amendments to the United States Constitution, and sections 1, 9, 10 and 13 of article I of the California Constitution;[2] and that as a consequence of the enforcement of the agreement plaintiffs and members of the class have been threatened with discharge, have in fact been discharged, demoted, subjected to job classification, discrimination, transfer, and have been refused employment.

Plaintiffs pray for damages in excess of $5,000, a declaration of rights and responsibilities of all the parties that the contract between the union

[2]Although appellants allege violation of rights under the California Constitution, they made no serious argument in support thereof in the trial court and have totally abandoned any argument in support thereof on appeal, placing their sole reliance upon the United States Constitution. This shift is probably dictated by the fact that union security covenants have been approved in California as a proper union objective. (*C. S. Smith Met. Market Co.* v. *Lyons* (1940) 16 Cal.2d 389 [106 P.2d 414]; *McKay* v. *Retail Auto. S. L. Union No. 1067* (1940) 16 Cal.2d 311 [106 P.2d 373], cert. den., 313 U.S. 566 [85 L.Ed. 1525, 61 S.Ct. 939]; *Petri Cleaners, Inc.* v. *Automotive Employees etc. Local No. 88* (1960) 53 Cal.2d 455 [2 Cal.Rptr. 470, 349 P.2d 76]; *Messner* v. *Journeymen Barbers etc. International Union* (1960) 53 Cal.2d 873 [4 Cal.Rptr. 179, 351 P.2d 347]; *Shafer* v. *Registered Pharmacists Union* (1940) 16 Cal.2d 379, 387 [106 P.2d 403]; *Stephenson* v. *City of Palm Springs* (1959) 52 Cal.2d 407 [340 P.2d 1009]; *Chavez* v. *Sargent, supra,* 52 Cal.2d 162 (disapproved on other grounds, *Petri Cleaners, Inc.* v. *Automotive Employees etc. Local No. 88, supra,* 53 Cal.2d 455, 475).) Secondly, appellants desire to use such approval in support of their position that such encouragement and protection constitutes state action for the purpose of bringing them within the protection of the federal Constitution. Whatever the reason, since the California Constitution was not relied upon in the brief or on oral argument, it will be treated as waived. (*Coronet Credit Corp.* v. *West Thrift Co.* (1966) 244 Cal.App.2d 631, 641-642 [53 Cal.Rptr. 433]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 425, p. 4391.)

and the growers is void and, thirdly, for an injunction against enforcing the provisions of the contract.

■ At the threshold we must determine if the cause has become moot by reason of the expiration of the contract between the union and growers on July 29, 1973.[3]

■ Events which occur during the pendency of an appeal may cause a matter to be moot (*Paul* v. *Milk Depots, Inc.* (1964) 62 Cal.2d 129 [41 Cal.Rptr. 468, 396 P.2d 924]; *Callie* v. *Board of Supervisors* (1969) 1 Cal.App.3d 13 [81 Cal.Rptr. 440]), making it permissible to dispose of the appeal on that ground. ■ In the case at the bench, however, while the expiration of the contract has rendered the cause moot as to the declaratory and injunctive relief prayed for because no effectual relief could be granted (see *Paul* v. *Milk Depots, Inc., supra,* at pp. 132-133), the cause with respect to damages during the term of the contract is not moot; we therefore proceed to consider the matter on the merits with respect to the issue of damages only.

■ We turn to the controlling question of whether there is sufficient state action or action under color of state law to bring plaintiffs within the protection of the United States Constitution inasmuch as that instrument erects no shield against purely private conduct. (*The Civil Rights Cases* (1883) 109 U.S. 3 [27 L.Ed. 835, 3 S.Ct. 18]; *Shelley* v. *Kraemer* (1948) 334 U.S. 1, 13 [92 L.Ed. 1161, 1180, 68 S.Ct. 836, 3 A.L.R.2d 441].)[4]

---

[3]This fact is before us by virtue of the terms of the contract which is part of the pleadings and is conceded by plaintiffs in their affidavit submitted in opposition to a motion to dismiss on the ground that the cause is moot.

[4]Though not raised or argued by the parties, we have serious doubt (1) that plaintiffs have sufficiently alleged action under color of state law or (2) that they can state a cause of action for damages under the federal constitutional provisions pursuant to which they seek protection in a state court absent federal statutory authorization therefor.

Under the Civil Rights Act (42 U.S.C. § 1983) a state court probably has concurrent jurisdiction with the federal courts to entertain an action (*Long* v. *District of Columbia* (1972) 469 F.2d 927, 937 [152 App.D.C. 187]; *International Prisoners' Union* v. *Rizzo* (E.D.Pa. 1973) 356 F.Supp. 806, 810; contra: *Beauregard* v. *Wingard* (S.D.Cal. 1964) 230 F.Supp. 167, 185). However, the complaint does not allege the crucial requirement that the alleged deprivation of rights was "under color of state law." (*Place* v. *Shepherd* (6th Cir. 1971) 446 F.2d 1239, 1244-1245; *Ehrlich* v. *Van Epps* (7th Cir. 1970) 428 F.2d 363, 364; see *Seeley* v. *Brotherhood of Painters, Decorators, etc.* (5th Cir. 1962) 308 F.2d 52, 58.)

Aside from the Civil Rights Act, we find no federal statutory authorization for the instant action for damages. While *Bivens* v. *Six Unknown Fed. Narcotics Agents* (1971) 403 U.S. 388 [29 L.Ed.2d 619, 91 S.Ct. 1999] held for the first time that

California has no statute or policy either requiring that collective bargaining agreements include union shop provisions or invalidating such agreements. No facts are alleged in the pleadings to indicate other`than that the growers and union entered into the collective bargaining agreement herein through private negotiations and through the normal give and take of collective bargaining without any compulsion of California law.

█ What constitutes state action under a given set of facts is to be determined on a case-by-case basis. As stated in *Burton* v. *Wilmington Pkg. Auth.* (1961) 365 U.S. 715, 722 [6 L.Ed.2d 45, 50, 81 S.Ct. 856]: "It is clear, as it always has been since the *Civil Rights Cases* . . . that 'Individual invasion of individual rights is not the subject-matter of the amendment,' [citation] and that private conduct abridging individual rights does no violence to the Equal Protection Clause [and thus the Fourteenth Amendment in general] unless to some significant extent the State in any of its manifestations has been found to have become involved in it. Because the virtue of the right to equal protection of the laws could lie only in the breadth of its application, its constitutional assurance was reserved in terms whose imprecision was necessary if the right were to be enjoyed in the variety of individual-state relationships which the Amendment was designed to embrace. For the same reason, to fashion and apply a precise formula for recognition of state responsibility under the Equal Protection Clause is an 'impossible task' which 'This Court has never attempted.' [Citation.]" *Evans* v. *Newton* (1966) 382 U.S. 296, 299 [15 L.Ed.2d 373, 377, 86 S.Ct. 486], instructs: "What is 'private' action and what is 'state' action is not always easy to determine. [Citation.] Conduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action."

---

a damage action may be maintained in the federal court for an invasion of Fourth Amendment rights, we are persuaded that this authority probably cannot be invoked here because (a) that remedy is restricted to violation of Fourth Amendment rights (*Smothers* v. *Columbia Broadcasting System, Inc.* (C.D.Cal. 1972) 351 F.Supp. 622, 625-626; *Davidson* v. *Kane* (E.D.Va. 1972) 337 F.Supp. 922, 924), and (b) the remedy is a federal court remedy (see *Bivens, supra,* at pp. 396-397 [29 L.Ed.2d at pp. 626-627]; *Breitwieser* v. *KMS Industries, Inc.* (5th Cir. 1972) 467 F.2d 1391 (cert. den. 410 U.S. 969 [35 L.Ed.2d 705, 93 S.Ct. 1445]; *Monarch Insurance Co. of Ohio* v. *District of Columbia* (D.D.C. 1973) 353 F.Supp. 1249; *Larez* v. *Oberti* (1972) 23 Cal.App.3d 217, 223-225 [100 Cal.Rptr. 57]).

In any event, we do not reach or pass upon these questions because of our disposition of the cause on the ground that there is not sufficient state action to invoke federal constitutional protections.

Appellants argue that the action of the union and owners in entering into the agreement constitutes state action because California has encouraged and protected union shop agreements. They point to Labor Code section 921 outlawing yellow-dog contracts (*Petri Cleaners, Inc.* v. *Automotive Employees etc. Local No. 88* (1960) 53 Cal.2d 455, 470 [2 Cal.Rptr. 470, 349 P.2d 76]), Labor Code section 922 making it a misdemeanor for any person to coerce or compel any person to agree not to join a labor organization as a condition of employment, and Labor Code section 923 declaring it to be public policy that the individual workman shall have freedom of association, self-organization and designation of representatives of his own choosing to negotiate the terms and conditions of his employment, free from interference of employers. They also point to Labor Code section 1126, making collective bargaining agreements enforceable in law and equity. Reference is also made to certain California decisions which uphold the validity of union security agreements (see *C. S. Smith Met. Market Co.* v. *Lyons, supra,* 16 Cal.2d 389; *Park & T. I. Corp.* v. *Int. etc. of Teamsters* (1946) 27 Cal.2d 599 [165 P.2d 891, 162 A.L.R. 1426]; *McKay* v. *Retail Auto. S. L. Union No. 1067* (1940) 16 Cal.2d 311 [106 P.2d 373], cert. den. 313 U.S. 566 [85 L.Ed. 1525, 61 S.Ct. 939]; *Petri Cleaners, Inc.* v. *Automotive Employees etc. Local No. 88, supra,* 53 Cal.2d 455; *Messner* v. *Journeymen Barbers etc. International Union* (1960) 53 Cal.2d 873 [4 Cal.Rptr. 179, 351 P.2d 347]), and finally to certain decisions which have held that local "right to work" ordinances are invalid because the above referred to statutes preempt such local action. (*Stephenson* v. *City of Palm Springs* (1959) 52 Cal.2d 407 [340 P.2d 1009]; *Chavez* v. *Sargent* (1959) 52 Cal.2d 162 [339 P.2d 801] (disapproved on other grounds, *Petri Cleaners, Inc.* v. *Automotive Employees etc. Local No. 88, supra,* 53 Cal.2d 455, 475); *Retail Clerks' Union* v. *Superior Court* (1959) 52 Cal.2d 222 [339 P.2d 839] (disapproved on other grounds, *Petri Cleaners, Inc.* v. *Automotive Employees etc. Local No. 88, supra,* 53 Cal.2d 455, 475).)

In our view, however, the state policy so announced and the case decisions referred to do not change the fundamental fact that California has taken no action either to require the inclusion of a union shop provision in a collective bargaining agreement or to invalidate such a provision. A collective bargaining agreement without a union shop covenant is entitled to legal protection. The position of the state can best be characterized as one of benign neutrality in that labor and management are free from any

hindrances upon opportunities to bargain collectively. The Legislature has in effect left the field unregulated, neither requiring nor prohibiting union shop provisions but lending its support and encouragement to collective bargaining agreements freely entered into and making them equally enforceable in the courts whether such agreements do or do not contain union shop provisions. Such passivity falls far short of the state action required to bring the federal constitutional protections into operation.

*Mendoza* v. *United Farm Workers Organizing Committee* (9th Cir. 1973) 487 F.2d 311 is a class action companion to the case at bench, commenced against the same defendants, regarding the same collective bargaining contract and seeking the same relief by a different party plaintiff farm worker. The circuit court affirmed the judgment of dismissal entered by the federal district court on the ground that the complaint failed to allege such state action as the Fourteenth Amendment of the United States Constitution requires. The court said: "The present complaint does not allege that the defendants entered into and performed their union shop agreement under any compulsion of California law rather than through the normal give and take of collective bargaining and labor-management relations. We add that we have found nothing in California law that coerces parties to include union shop provisions in a labor contract. In these circumstances, we agree with the district court that the complaint was inadequate."

In *Adams* v. *Southern California First National Bank* (9th Cir. 1973) 492 F.2d 324, the court held that the enactment of sections 9503 and 9504 of the California Commercial Code authorizing, codifying and recognizing a preexisting prejudgment self-help remedy by repossession and sale of secured property did not constitute sufficient state action to establish a federal cause of action under protections afforded by the United States Constitution. The court pointed to the fact that the codification was of a preexisting policy and "[t]here is no 'pervasive' state action directed to self-help repossession to require its use. It is simply named as one of two already existing alternatives." The court further stated that the State of California had not "significantly involved" itself in self-help repossession by virtue of having authorized such action in the statutory enactment under the test laid down by the Supreme Court in *Moose Lodge No. 107* v. *Irvis* (1972) 407 U.S. 163, 173 [32 L.Ed.2d 627, 637, 92 S.Ct. 1965], where the court said: "Our holdings indicate that where the impetus for the

discrimination is private, the State must have 'significantly involved itself . . .' to fall within the ambit of the constitutional prohibition."

In *Moose Lodge No. 107* v. *Irvis, supra,* 407 U.S. 163, a black guest was denied service in the Moose Lodge bar, which was licensed as a private club by the Pennsylvania Liquor Control Board. Licenses were limited and the control board imposed a detailed regulatory scheme upon licensees. The court stated that, "The Court has never held, of course, that discrimination by an otherwise private entity would be violative of the Equal Protection Clause if the private entity receives any sort of benefit or service at all from the State, or if it is subject to state regulation in any degree whatever" (407 U.S. at p. 173 [32 L.Ed.2d at p. 637, 92 S.Ct. at p. 1971], and continues that ". . . the operation of the regulatory scheme enforced by the Pennsylvania Liquor Control Board does not sufficiently implicate the State in the discriminatory guest policies of Moose Lodge so as to make the latter 'state action' within the ambit of the Equal Protection Clause of the Fourteenth Amendment." (407 U.S. at p. 177 [32 L.Ed.2d at p. 640, 92 S.Ct. at p. 1973]. In effect the court held that even a clear, detailed regulation and licensing control system, including quotas, does not represent state action where the precise rules or conditions limiting conduct are voluntarily agreed upon by the private parties engaged in private affairs. While this expression may demonstrate a trend away from prior expressions of the Supreme Court of the United States, we are nevertheless bound by it.

Appellants' reliance is placed principally on *Railway Employes' Dept.* v. *Hanson* (1956) 351 U.S. 225 [100 L.Ed. 1112, 76 S.Ct. 714]. In that case Congress had enacted the Railway Labor Act, 45 United States Code Annotated, section 151 et seq., which provided in part that a union shop was permissible notwithstanding the law of any state. (45 U.S.C.A. § 152 (Eleventh).) The court found that this statute was enacted for the purpose of superseding inconsistent "right to work" laws in 17 states which prohibited union shops. (351 U.S. 225, 231-232 [100 L.Ed. 1112, 1130-1131, 76 S.Ct. 714, 718].) Thus the court held that by so allowing union shop clauses, action undertaken pursuant to these contract clauses constituted governmental action sufficient to invoke the protection of the Constitution because without such congressional action the union shop clause would have been unlawful in those 17 states.

Appellants assert that the *Hanson* situation is analogous to the situation in California because the Legislature has enacted laws which have been

interpreted to preempt local "right to work" ordinances. (See *Retail Clerks' Union* v. *Superior Court, supra,* 52 Cal.2d 222; *Stephenson* v. *City of Palm Springs, supra,* 52 Cal.2d 407; *Chavez* v. *Sargent, supra,* 52 Cal.2d 162.) Nevertheless, there are crucial distinctions between *Hanson* and the situation here presented which dictate the conclusion that there is not sufficient state action here involved. To begin with, the California statute which has been interpreted to occupy the field and thus preempt inconsistent right to work ordinances does not, as did the Railway Labor Act, expressly refer to union shops. (See Lab. Code, § § 921-923.) Secondly, the union shop has always been lawful in California and thus the enactment of the above referred to Labor Code sections did not divert from the traditional policy of the state. (*Shafer* v. *Registered Pharmacists Union, supra,* 16 Cal.2d 379, 387.) Furthermore, the local right to work ordinances did not originate until well after the enactment of the controlling sections of the Labor Code, while in *Hanson* the right to work laws were enacted prior to the union shop provision of the Railway Labor Act which was designed to supersede them. These distinctions were recognized in *Otten* v. *Baltimore & O. R. Co.* (2d Cir. 1953) 205 F.2d 58 and *Wicks* v. *Southern Pac. Co.* (S.D.Cal. 1954) 121 F.Supp. 454 affd. (9th Cir. 1956) 231 F.2d 130, cert. den., 351 U.S. 946 [100 L.Ed. 1471, 76 S.Ct. 845]). In the *Otten* case, the plaintiffs sought an injunction prohibiting the defendant railroad from discharging him pursuant to a union shop provision authorized by the Railway Labor Act. The district court declined to convene the three-judge district court on the grounds that the constitutionality of the Railway Labor Act was not called into question. On appeal, the court, per L. Hand, Judge, held that it was proper not to convene the three-judge court because the constitutionality of the act could in no way have been called into question. The court reasoned that if the union shop had originally been unlawful in New York where the case arose and the Railway Labor Act was to the contrary, then there may have been sufficient governmental action to call into question the validity of the act. The court held, however, that since the union shop had always been valid under New York common law, then Congress' enactment of the Railway Labor Act was not sufficient governmental action as to this New York plaintiff to call into question the constitutionality of the act. (205 F.2d at pp. 60-61.) The facts presented in the *Otten* case were almost identical to those presented in *Wicks* v. *Southern Pac. Co., supra,* 121 F.Supp. 454. In *Wicks,* the court held that since California, like New York, had always permitted the union shop, then the constitutionality of the act could not be questioned in that proceeding. (231 F.2d 130, 135-137; 121 F.Supp. 454, 456-457.)

It is thus concluded that the California policy of allowing union and closed shops and the consequent preemption of subsequently enacted inconsistent local ordinances does not constitute sufficient state action to invoke the sanctions of the federal Constitution.

Inasmuch as we have concluded that state action was not involved in the making or implementation of the collective bargaining contract between the union and the growers, plaintiffs cannot invoke the protection of the federal Constitution, and we need not treat the other questions raised.

The judgment is affirmed.

Gargano, J., and Franson, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 31, 1974.