[Civ. No. 34745. First Dist., Div. Four. July 11, 1975.]

JONATHAN C. BRATT et al., Plaintiffs and Appellants, v.
CITY AND COUNTY OF SAN FRANCISCO, et al.,
Defendants and Respondents.

## Counsel

Garry, Dreyfus, McTernan, Brotsky, Herndon & Pesonen and Francis J. McTernan for Plaintiffs and Appellants.

Thomas M. O'Connor, City Attorney, George P. Agnost, Deputy City Attorney, and Thomas X. Schiff, Ex Officio Deputy City Attorney, for Defendants and Respondents.

## OPINION

**THE COURT.\***—Plaintiffs filed a complaint against defendant City and County of San Francisco seeking damages for personal injury to two persons and for the wrongful death of two others. The appeal is from a judgment of nonsuit.

Two police officers stopped their car behind a white Cadillac automobile which was double-parked on Fillmore Street in San Francisco. The occupants of the double-parked vehicle appeared startled and nervous, and a third passenger hurriedly entered the car.

As the officers approached on foot, the double-parked vehicle moved off rapidly. The police returned to their car and gave chase. The officers recalled teletypes describing certain suspects of recent armed robberies. One robbery had reportedly been committed by three Negro men driving a white Cadillac; the occupants of the car in the present case were Negro.

The police pursued the fleeing vehicle over major city streets, through residential and commercial areas, with the patrol car's red light and siren operating. The Cadillac travelled at as high speed as possible, weaving dangerously through traffic; the police reached a maximum speed of 45 miles per hour, but were able to keep within sight of the fugitives as the police car was more maneuverable in making turns. The route of the chase was congested in some areas with vehicular and pedestrian traffic, and the Cadillac once ran up on the sidewalk to avoid cars, narrowly missing pedestrians. The police requested the assistance of other patrol cars in order to set up a roadblock for the fleeing car.

The pursuit climaxed in a collision between the Cadillac and another vehicle. Appellants seek damages in this action for personal injuries and wrongful deaths which occurred in the collision.

■ Appellants contend that the police officers acted arbitrarily in deciding to exercise the privilege, contained in Vehicle Code sections

---

\*Before Caldecott, P. J., Rattigan, J. and Christian, J.

21055-21056,[1] which allows drivers of emergency vehicles to disregard ordinary rules of the road in urgent situations; that this abuse proximately caused the accident; and that the judgment of nonsuit was error.

If the accident occurred as a consequence of any police conduct, that conduct would be the decision to pursue the fleeing vehicle; there was no evidence that the accident was caused by the violation of any specific traffic regulation mentioned in section 21055. The decision to pursue is protected by Vehicle Code section 17004, which precludes liability for injuries resulting from the operation of an emergency vehicle "in the immediate pursuit of an actual or suspected violator of the law . . ." The decision to pursue was a discretionary act additionally protected by Government Code section 820.2.[2] (See *McCarthy* v. *Frost* (1973) 33 Cal.App.3d 872 [109 Cal.Rptr. 470], and *Ne Casek* v. *City of Los Angeles* (1965) 233 Cal.App.2d 131 [43 Cal.Rptr. 294].)

*McCorkle* v. *City of Los Angeles* (1969) 70 Cal.2d 252 [74 Cal.Rptr. 389, 449 P.2d 453], is to be distinguished. In *McCorkle*, while defendant's police officer investigated an automobile accident, he directed a pedes-

[1]Vehicle Code section 21055:

"The driver of an authorized emergency vehicle is exempt from Chapter 2 (commencing with Section 21350). Chapter 3 (commencing with Section 21650) except Section 21714. Chapter 4 (commencing with Section 21800). Chapter 5 (commencing with Section 21950). Chapter 6 (commencing with Section 22100). Chapter 7 (commencing with Section 22349). Chapter 8 (commencing with Section 22450). Chapter 9 (commencing with Section 22500). and Chapter 10 (commencing with Section 22650) of this division under all of the following conditions:

"(a) If the vehicle is being driven in response to an emergency call or while engaged in rescue operations or is being used in the immediate pursuit of an actual or suspected violator of the law or is responding to. but not returning from. a fire alarm. except that fire department vehicles are exempt whether directly responding to an emergency call or operated from one place to another as rendered desirable or necessary by reason of an emergency call and operated to the scene of the emergency or operated from one fire station to another or to some other location by reason of the emergency call.

"(b) If the driver of the vehicle sounds a siren as may be reasonably necessary and the vehicle displays a lighted red lamp visible from the front as a warning to other drivers and pedestrians.

"A siren shall not be sounded by an authorized emergency vehicle except when required under this section."

Vehicle Code section 21056:

"Section 21055 does not relieve the driver of a vehicle from the duty to drive with due regard for the safety of all persons using the highway. nor protect him from the consequences of an arbitrary exercise of the privileges granted in that section."

[2]Government Code section 820.2:

"Except as otherwise provided by statute. a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him. whether or not such discretion be abused."

trian, plaintiff, in such a way that plaintiff was struck by a car. The policeman's allegedly negligent investigation was held not discretionary and therefore not covered by the immunity afforded by section 820.2 of the Government Code. The Supreme Court said that the policeman "would have been immune if plaintiff's injury had been the *result* of his [the policeman's] exercise of discretion. . . . It was not: it resulted from his negligence after the discretion, if any, had been exercised. Because the essential requirement of section 820.2—a causal connection between the exercise of discretion and the injury—did not exist, the statutory immunity does not apply." (*McCorkle* v. *City of Los Angeles, supra,* at pp. 261-262.) In the present case, negligence was alleged in the police officers' decision to give high speed chase rather than in the officers' execution of that decision.

Appellants concede that *Pagels* v. *City & County of S. F.* (1955) 135 Cal.App.2d 152 [286 P.2d 877], and *Draper* v. *City of Los Angeles* (1949) 91 Cal.App.2d 315 [205 P.2d 46], are square holdings against them. These cases involved dismissals of actions (*Pagels:* nonsuit; *Draper:* judgment notwithstanding the verdict) against municipalities for damages sustained when a vehicle being hotly pursued by police collided with a victim's vehicle. The judgments of dismissal were affirmed in both cases.

These results were based upon (1) the obligation of the police to apprehend the fleeing driver ("the officers were under no duty to allow him to make a leisurely escape" *Draper, supra,* at p. 319); and (2) the absence of a duty owed to plaintiffs to protect them from the fleeing driver ("They [the police] owed no duty to plaintiffs except to operate their own car with due care and they fulfilled this duty" *ibid.*). (The results of these cases are in line with the majority of jurisdictions that have considered the question. See 83 A.L.R.2d 452.)

Appellants urge this court to reject the California precedents and be guided instead by *Myers* v. *Town of Harrison* (2d Cir. 1971) 438 F.2d 293. In *Myers,* the police pursued a fleeing driver over wet and narrow roads in a residential area at speeds up to 100 miles per hour. The pursuit ended in a collision at a police roadblock between the fleeing car and that of another driver, the plaintiff, who was killed by the impact. The United States Court of Appeals affirmed a judgment determining that the police were liable for damages sustained by the plaintiff in the collision. As appellants indicate, the defendants were held to be liable in *Myers* despite the existence of a statute, similar to Vehicle Code sections 21055-21056, according to the police a privilege to exceed limits in

emergency situations. The court reasoned as follows: "The only question before this court is whether there was sufficient evidence on this question to allow it to be submitted to the jury. Speeds of up to 100 miles per hour on wet and narrow roads, through a residential section, in pursuit of a traffic violator might well be said to create an unreasonable risk to public safety and there was expert testimony that pursuit in these circumstances does not constitute 'common and accepted good police practices.'" (*Myers, supra,* at p. 296.) But this court will not create a conflict in the California decisions by disregarding precedents which are concededly applicable and are consistent with the apparent intent of Vehicle Code sections 17004 and 21055 and Government Code section 820.2.

Appellants contend that it was an abuse of discretion to deny a continuance and thereby exclude expert testimony on the standards of good police practice in hot-pursuit chases. It is claimed that such testimony would have provided a basis for distinguishing this case from *Pagels, supra,* and *Draper, supra.* The court's ruling that "this case is not one which calls for expert testimony" was correct; the facts of the present case more strongly justify the granting of a nonsuit than did the facts of *Pagels* and *Draper,* in which claims of police negligence rested upon failure to use sirens while engaged in hot pursuit. In the present case, the siren was used; appellants' claims of negligence rest solely upon the police officers' decision to pursue the Cadillac. "' "[I]t is a settled rule of practice that an application for a continuance is addressed to the sound discretion of the trial court, and its ruling will not be reviewed except for the most cogent reasons. The trial court is apprised of all the circumstances of the case and the previous proceedings, and is, therefore better able to decide upon the propriety of granting the application than an appellate court; and when it exercises a reasonable, and not an arbitrary discretion, its action will not be disturbed. It follows that an abuse of discretion must be shown to justify a reversal of the judgment because of a ruling on such matters." ' " (*Thorpe* v. *Thorpe* (1946) 75 Cal.App.2d 605, 609 [171 P.2d 126].)

Appellants have shown no abuse of discretion in the trial court's denial of a continuance.

The judgment is affirmed.