[Civ. No. 48858. Second Dist., Div. One. Dec. 6, 1976.]

MACKIE SPARKS, Plaintiff and Appellant, v.
CITY OF COMPTON et al., Defendants and Respondents.

**COUNSEL**

Brundage & Roseman and Anthony J. Bradisse for Plaintiff and Appellant.

Waters, McCluskey & Corcoran, Richard A. Wall, Donald W. Barber and Virgil R. Wells for Defendants and Respondents.

OPINION

LILLIE, J.—Plaintiff appeals from summary judgment[1] entered in favor of defendants.

The complaint alleges that at the time of the incident in question, defendants Alvarez and Smith, employees of the City of Compton, were acting within the course and scope of their employment.[2] The critical allegation of plaintiff's first cause of action recites that around 2:20 p.m. at the intersection of Palmer and Pearl in Compton, plaintiff's vehicle was involved in an accident with one operated by Willie Sledge; prior thereto defendants Alvarez and Smith, police officers not in uniform, were operating a vehicle owned by them which was unmarked, bore no identification other than license plates, no red lights or siren, and no police insignia or markings; at Rosecrans and Long Beach Boulevard, defendants Alvarez and Smith admonished Willie Sledge and other occupants in his vehicle to drive more carefully; ultimately, all of the participants became engaged in a shouting and swearing contest and became emotionally charged, whereupon defendants Alvarez and Smith left their vehicle in a hostile and threatening manner and brandishing firearms without identifying themselves as police officers; thereupon, Willie Sledge became fearful, and in apparent panic, fled the scene "where no felony was committed nor apparent, and where no justification appeared to display or threaten deadly force"; immediately defendants chased the Sledge vehicle at high rates of speed, engaging in dangerous maneuvers in a populated area and in heavy traffic, all in a negligent, careless, and unlawful manner; "rather than dismiss the original verbal exchange for what little consequence it was, the defendants, and each of them persisted with the exercise of further negligence, careless and unlawful conduct and negligent entrustment, in the emotional and unnecessary pursuit of the Sledge vehicle, causing apparent

[1]The only support of or opposition to the motions for summary judgment were the points and authorities and declarations of counsel. The declarations of defendants' respective counsel reveal the true nature of the motions in stating "That if [defendants] were to admit the allegations in the complaint as true for the purposes of this Motion, plaintiff cannot and has not stated a good cause of action against [defendants]." This amounts to a challenge to plaintiff's ability to state a cause of action as a matter of law, thus their motions were tantamount to motions for judgment on the pleadings (see, *Jones-Hamilton Co.* v. *Franchise Tax Bd.*, 268 Cal.App.2d 343, 347 [73 Cal.Rptr. 896]; *Magna Development Co.* v. *Reed*, 228 Cal.App.2d 230, 234-235 [39 Cal.Rptr. 284]).

[2]All parties agree that for present purposes it may be assumed that Alvarez and Smith were acting within the course and scope of their employment, notwithstanding they were off duty at the time, despite city's denial of this fact in its answer.

further terror to said Willie Sledge, with the certain and expected result of a traffic accident at the intersection of Palmer and Pearl" with plaintiff's vehicle; plaintiff, operating his vehicle and in obedience of all laws and regulations, was struck by the Sledge vehicle, in consequence whereof he sustained grievous injuries.

The parties expend much of their energies disputing whether police officers and their employer can be held liable for an accident involving a third party and a vehicle being pursued by officers who failed to use warning devices, viz, siren or lights, in the course of the pursuit. Inasmuch as an original police decision to stop or pursue a suspected wrongdoer is ordinarily deemed discretionary (*Bratt* v. *City and County of San Francisco,* 50 Cal.App.3d 550, 553 [123 Cal.Rptr. 774]; and see, *McCarthy* v. *Frost,* 33 Cal.App.3d 872, 875 [109 Cal.Rptr. 470]; *Michenfelder* v. *City of Torrance,* 28 Cal.App.3d 202, 206-207 [104 Cal.Rptr. 501]; *Ne Casek* v. *City of Los Angeles,* 233 Cal.App.2d 131, 134 [43 Cal.Rptr. 294]) (appellant concedes as much), neither police nor their employer would incur any liability by virtue of this threshold decision.[3] ■ Although negligence in the execution of the act following this decision might give rise to liability (*McCorkle* v. *City of Los Angeles,* 70 Cal.2d 252, 261 [74 Cal.Rptr. 389, 449 P.2d 453]; *Johnson* v. *State of California,* 69 Cal.2d 782, 797 [73 Cal.Rptr. 240, 447 P.2d 352]), in California police failure or inability to use a siren or warning lights while in pursuit of another vehicle which is involved in an accident is not itself actionable negligence, though the police thereby forfeit otherwise applicable exemption from certain portions of the Vehicle Code. (*Pagels* v. *City and County of S.F.,* 135 Cal.App.2d 152 [286 P.2d 877]; *Draper* v. *City of Los Angeles,* 91 Cal.App.2d 315 [205 P.2d 46].) But the apparent misdirection of the parties does not determine the responsibility of this court upon review. ■ When the sufficiency of a complaint to state a legally cognizable cause of action is raised on motion for judgment on the pleadings, the motion should be denied if it appears that the plaintiff is entitled to relief on any theory—even if facts entitling him to such relief are not clearly stated or are intermingled with a statement of other facts irrelevant to the particular cause of action. (*Crain* v. *Electronic*

---

[3]Government Code section 820.2 provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

Section 815.2, subdivision (b) states: "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

*Memories & Magnetics Corp.,* 50 Cal.App.3d 509, .524 [123 Cal.Rptr. 419]; see *California Trust Co.* v. *Cohn,* 214 Cal. 619, 628 [7 P.2d 297]; *Covo* v. *Lobue,* 220 Cal.App.2d 218, 221 [33 Cal.Rptr. 828].)

■ A fair construction of the pleadings shows alleged negligence prior to the time the pursuit began. The critical part of the first cause of action relates to the genesis of the pursuit of the Sledge vehicle by defendants. Plaintiff alleges, and we must accept the allegation as true (*Gabaldon* v. *United Farm Workers Organizing Committee,* 35 Cal.App.3d 757, 759 [111 Cal.Rptr. 203] [cert. den., 416 U.S. 957 (40 L.Ed.2d 307, 94 S.Ct. 1972)]), that Alvarez and Smith for some reason become involved in a heated verbal altercation with Sledge and the occupants of his vehicle, during which Alvarez and Smith exited their vehicle in a hostile threatening manner brandishing firearms, all of which occurred without defendants having identified themselves as officers either by word or identification on their persons or vehicle.[4] Essentially he pleads that as a result of the negligent and wrongful acts of Alvarez and Smith, the driver and occupants of the Sledge vehicle were placed in fear of their safety giving rise to an effort to elude their armed antagonists, which in turn led to the collision with plaintiff's vehicle. But for the fact that defendants were officers presumably acting as such, it is unlikely there could be any serious dispute about plaintiff's ability to state a cause of action against them. ■ Generally, one who negligently creates a situation threatening harm to another person may be held liable for injury to that person or a third party resulting from the threatened party's efforts to avoid the peril. (*Churchman* v. *County of Sonoma,* 59 Cal.App.2d 801, 805-806 [140 P.2d 81].[5]) Foreseeability is a

[4]The brief of respondent Alvarez states that he and Smith did identify themselves as policemen as they approached the Sledge vehicle. This appears to be defendant's first effort to contradict the allegations of the complaint, but we discount this attempted contradiction inasmuch as for this review we regard the allegations of the complaint to be true.

[5]A reasonable person may be required to anticipate "that human beings who are placed in a position of peril will endeavor, more or less instinctively, to escape, and may do harm to themselves or others in the attempt." (Fn. omitted.) (Prosser, Law of Torts (4th ed. 1971) pp. 170-171.)

"It is common experience that a sudden fright or shock is likely to cause the person subjected to it to react to it instinctively without regard to the danger involved to himself or to others in his vicinity. The circumstances which the actor knows, or which he should recognize as likely to exist, may be such that he should realize that this instinctive reaction may involve risk to the bodily security of the other whom he subjects to the shock or to the bodily security of third persons. If so, he is negligent toward them if he intentionally subjects the other to such a shock or acts in a manner which he should recognize as involving an unreasonable risk of such a result." (Rest.2d Torts, § 303, com. e.)

■

question for the trier of fact. (*Weirum* v. *RKO General, Inc.,* 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36].) A trier of fact could reasonably find that one who, during the course of an altercation, brandishes a weapon at persons in a vehicle and then pursues that vehicle has created a situation foreseeably endangering other users of the highway.

Possibly distinguishing the situation alleged in the complaint from that just described would be any intent of Alvarez and Smith acting within the scope of their employment, to arrest or detain one or more of the occupants of the Sledge vehicle. But assuming they had such intention, it is of no significance in this cause unless communicated to the persons in the Sledge vehicle who could otherwise only know that two angry threatening gun brandishing men were advancing on them. Had defendants complied with Penal Code section 841,[6] the circumstances would have assumed a different complexion. Admittedly the statute enumerates exceptions to the requirement therein "when the person making the arrest has reasonable cause to believe that the person to be arrested is actually engaged in the commission of or an attempt to commit an offense, or the person to be arrested is pursued immediately after its commission, or after an escape."; and certain judicial decisions have further tempered the code section. (*People* v. *Braun,* 29 Cal.App.3d 949, 969 [106 Cal.Rptr. 56] [cert. den., 414 U.S. 974 (38 L.Ed.2d 217, 94 S.Ct. 294)]; *People* v. *Jablon,* 153 Cal.App.2d 456, 460 [314 P.2d 824].) But the complaint, liberally construed (*Gabaldon* v. *United Farm Workers Organizing Committee, supra,* 35 Cal.App.3d 757, 759), negates the existence of any of these exceptions. Conceivably, in the absence of an oral declaration by defendants of intention to arrest and the cause therefor, circumstances might have made this reasonably inferable by the occupants of the Sledge vehicle, but realistically this is so only if one assumes the officers somehow had been identified as such. ■ It is our view that plaintiff's cause of action for negligence may be premised on defendants' failure to identify themselves as police officers.[7]

*"If a person has knowledge, or by the exercise of reasonable care, should have knowledge, that he is being arrested by a peace officer, it is the duty of*

---

[6]"The person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it . . . ."

[7]This cause of action may be described as one for negligence in the manner of arrest. Assuming the decision to arrest to be discretionary and therefore immune from liability, such immunity would not shield the defendants from liability for negligence in the implementation of this decision. (*McCorkle* v. *City of Los Angeles,* 70 Cal.2d 252, 261 [74 Cal.Rptr. 389, 449 P.2d 453]; *Johnson* v. *State of California,* 69 Cal.2d 782, 797 [73 Cal.Rptr. 240, 447 P.2d 352].)

such person to refrain from using force or any weapon to resist such arrest." (Italics added.) (§ 834a, Pen. Code.) Only the knowledge (or grounds therefor) of the officer's authority imposes on an arrestee the obligation to yield without resistance. Alvarez and Smith, by failing to identify themselves as officers either by word or indicia of authority, relieved the occupants of the Sledge vehicle of this obligation. That they chose to flee rather than to defend themselves against an apparent armed assault perhaps inured to the benefit of both parties. But defendants, having created the situation in which this option was present, cannot insist as a matter of law that they bear no responsibility for the manner in which the option was exercised.[8]

In a well-reasoned opinion, the Supreme Court of Wisconsin has reached a conclusion similar to that reached herein. In *Celmer* v. *Quarberg* (1973) 56 Wis.2d 581 [203 N.W.2d 45], the court thus framed the issue before it: "Should a police officer, operating in disguise, although acting in the line of duty, who confronts a citizen who has no reason to know of the officer's official identity, be held civilly liable for the failure to make a reasonable effort to inform the citizen of his identity?" (203 N.W.2d at p. 49.) Defendant, wearing long hair, mustache, long sideburns and a day's growth of beard, and two other officers, none in uniform or wearing a badge, were surveilling a barn (which they believed to contain marijuana) on an abandoned farm; plaintiff arrived to take his son's pigeons to exercise; plaintiff previously had observed old horse collars and hames in the barn in which he was interested and before releasing the pigeons, headed toward the barn; as he approached he became apprehensive about entering, turned and jogged back toward his car (he said he jogged for exercise whenever he could); the officers reacted and defendant confronted plaintiff at his car a gun in each hand; he kicked the car door shut and told plaintiff to put his hands on the car; thinking defendant was a "crazed farmer," he did not comply and defendant struck him on the head with a gun butt; plaintiff jumped into his car and as he drove away defendant shot the front tires; it was established he knew nothing about the marijuana in the barn;

---

[8]Penal Code section 245, subdivision (b), again underscores the significance of a citizen's knowledge of the identity of a police officer, providing for a more severe penalty for assault with a deadly weapon or by means of force likely to produce great bodily injury upon such a person where the assailant "knows or reasonably should know that such victim is a peace officer or fireman engaged in the performance of his duties . . . ."

For the proposition that the crime of assault upon a federal officer may be committed without knowledge of the official identity of the victim, see, *United States* v. *Feola* (1975) 420 U.S. 671, 684 [43 L.Ed.2d 541, 552, 95 S.Ct. 1255].)

plaintiff testified defendant never identified himself as a police officer, although there was testimony to the contrary.

The trial court determined as a matter of law that there had been probable cause to arrest plaintiff and that excessive force had not been used, and submitted the cause to the jury on the theory of negligence in the manner of arrest. Judgment entered for plaintiff on the verdict was affirmed. The Supreme Court noted that plaintiff's lack of knowledge that defendant was an officer was determined by the court and jury to be the causal factor of the events that resulted in his injuries, and that the jury determined defendant was negligent in failing to make a reasonable effort to identify himself as such, which determinations were supported by credible evidence. Said the court: "Where the officer's identity is concealed by a deliberate disguise, such as in this case, the private citizen has the right to look upon that person so confronting him as he would any other private citizen. . . . [¶] In the instant case, the plaintiff was confronted with a person who had a pistol in each hand and because of his grooming and dress appeared to be a 'crazed farmer.' Under the facts of this case, the plaintiff was entitled to resist and he had every right to flee from what appeared to be a serious attack upon him by another private citizen. . . . [¶] [Defendant] had the duty to make a reasonable effort to inform the plaintiff of his identity as a peace officer before [defendant] exercised the rights and privileges of that identity. . . . [¶] No particular declaration is required; the test, being one for the jury, requiring the officer, where the person does not know or have any reason to know of his official identity, to make a reasonable attempt to convey that fact. When the officer fails to so inform, yet exercises his privileges flowing from such an identity, the question of negligence arises. [¶] [Defendant's] failure to adequately identify himself, understandably caused plaintiff to flee. In the exercise of such a right, plaintiff was injured. [Defendant] is liable for the damages sustained by plaintiff." (Pp. 49-51, fn. omitted.)

In *Poole* v. *City of Louisville* (1963) 107 Ga.App. 305 [130 S.E.2d 157], the demurrers of two police officers and employer city were sustained. The complaint alleged that police, in an unmarked car and giving no signal of identification, suddenly and late at night, came onto the highway from a concealed position, turned on their lights and pursued plaintiff driver who was not in violation of any law; not knowing they were police or their purpose, he became frightened and tried to escape; the pursuit lasted more than 10 miles, at times at excessive speeds; he

became more frightened and with the unidentified vehicle directly behind him lost control. Plaintiff alleged that the conduct of the officers was wilful and wanton. Reversing as to the officers, the court said, "We think reasonable minds might disagree whether the police officers [acting as described] should have foreseen a strong probability that their conduct could cause the pursued person to be frightened and attempt to escape from their unidentified vehicle and to be injured in attempting to escape." (130 S.E.2d at p. 160.) Similarly, we believe that a jury reasonably might find Alvarez and Smith to have been negligent in acting as they did, and that that negligence proximately caused injury not to the pursued, but to one chancing to be in his path.

In *Grudt* v. *City of Los Angeles,* 2 Cal.3d 575 [86 Cal.Rptr. 465, 468 P.2d 825], at night and in a high crime area, two plainclothes officers in an unmarked car without light or siren observed Grudt in his car narrowly miss two pedestrians in a crosswalk, and resolved to stop and question but not arrest him; Grudt was slightly hard of hearing; after several unsuccessful attempts to identify themselves and Grudt did not yield, they became alarmed when he reached under the front seat of his car, and broadcast the report to two other plainclothes officers who intercepted Grudt as he stopped at an intersection; the officer tapped on the window with the muzzle of his loaded shotgun; Grudt "was surprised and appeared to be frozen to the wheel"; according to the officer, he raised his shotgun, leaned forward and pointed to the badge displayed on his left front pocket, Grudt turned his wheels to the left and accelerated the car in the direction of the second officer, the officer fired a shotgun blast through the car's window, and the second fired four rounds from his revolver into the left front window; Grudt died almost immediately. (Pp. 581-582.)

Viewing defendants' motion to exclude negligence as a jury issue as equivalent to a motion for nonsuit, the Supreme Court said at page 587: "At the very least, the evidence favorable to plaintiff raised a reasonable doubt whether [the officers] acted in a manner consistent with their duty of due care when they originally decided to apprehend Grudt, when they approached his vehicle with drawn weapons, and when they shot him to death. '[T]he actor's conduct must always be gauged in relation to all the other material circumstances surrounding it and if such other circumstances admit of a reasonable doubt as to whether such questioned

conduct falls within or without the bounds of ordinary care then such doubt must be resolved as a matter of fact rather than of law.' (*Toschi* v. *Christian* (1944) 24 Cal.2d 354, 360 [149 P.2d 848].)"

In our view *Grudt* in principle supports a cause of action for negligence against Alvarez, Smith and on the basis of respondent superior,[9] the City of Compton. Having no indication that the armed angry men approaching him were officers,[10] Sledge predictably fled the scene; upon pursuit by the unmarked vehicle, it was as predictable that the flight from these men would become more fearful and hurried, perhaps even reckless. A jury reasonably could conclude that the officers were negligent, and that the ensuing collision with and injury to plaintiff were within the scope of the risk created by this negligence. That plaintiff may have difficulty sustaining his burden of proving Sledge's lack of knowledge or that reasonably he could not have known that Alvarez and Smith were officers, cannot affect our decision given the present posture of the case.

Plaintiff's second cause of action neither alleges that Alvarez and Smith were acting within the course and scope of their employment[11] nor names the city as a defendant. After realleging certain critical portions of the first cause of action, the second recites that defendants Alvarez and Smith "operated, directed, controlled, and entrusted their said vehicle in a spirit of wanton bravado and cavalier abandon, together with depravity of purpose while in an emotionally agitated frame of mind, knowing full well, in the exercise of ordinary prudence, that such conduct would expose persons and property in the vicinity to grave and serious damage and injury; nonetheless, they, and each of them persisted in such wanton misconduct and, as a direct and proximate result thereof, the plaintiff sustained the injuries and damages alleged herein."

---

[9]Government Code section 815.2, subdivision (a), provides: "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."

[10]*Greven* v. *Superior Court,* 71 Cal.2d 287 [78 Cal.Rptr. 504, 455 P.2d 432], holding that the announcement requirement of section 844, Penal Code was not complied with in the absence of an officer's giving notice of his authority, underscores the significance of such notice in avoiding the possibility of violent confrontations. (Pp. 292-293.)

[11]Thus, the question of governmental immunity is not raised even peripherally by this cause of action at the pleadings stage.

The import of this allegation is somewhat vague. However, when read in context and considered in light of the discussion of the parties, it appears that plaintiff may have tried to analogize the pursuit with a "drag-race" situation. ■ Where two parties undertake to race on the public highways, and one of the parties is involved in an accident with a third person, the racer who avoided actual collision may be held civilly liable to the injured third party.[12] (*Tischoff* v. *Wolfchief,* 16 Cal.App.3d 703, 706-707 [94 Cal.Rptr. 299]; *Agovino* v. *Kunze,* 181 Cal.App.2d 591, 598 [5 Cal.Rptr. 534].)

■ True, not involved herein is the consensual conduct of a drag-race; one may even dispute whether this pursuit can be properly alluded to as a "race"; and the "race" obviously was not undertaken for the thrill of it as, one presumes, with a drag-race. Nevertheless, the similarities of the two situations cannot be easily dismissed.[13] While the driver of the Sledge vehicle was not invited to race, apparently his only alternative was to remain and fight to defend himself. Whatever the intentions of Alvarez and Smith at the inception of the incident, when they undertook to pursue the Sledge vehicle, a race was in the making.[14] Revelation of the purpose of the chase must await trial. It may develop that Alvarez and Smith were acting as police officers, in which case it would appear that their decision to pursue the Sledge vehicle was discretionary, raising the issue of governmental immunity.[15] If it develops that these defendants acted not as police officers but as private citizens, it would seem that plaintiff has simply stated alternative theories of recovery. At any rate, proximate causation is ordinarily a question for the trier of fact. (*Agovino* v. *Kunze,* 181 Cal.App.2d 591, 597 [5 Cal.Rptr.

[12]In a case wherein a victim of the accident was killed, the driver of the racing car not making contact was found guilty of manslaughter. (*People* v. *Kemp,* 150 Cal.App.2d 654 [310 P.2d 680].)

[13]We intimate no opinion as to the possible liability of the driver of the Sledge vehicle.

[14]Compare *People* v. *Harris,* 52 Cal.App.3d 419, 426-428, especially footnote 2 [125 Cal.Rptr. 40], wherein it is observed: "In cases such as *Kemp* where two drivers are racing each other and one of the vehicles collides with a third vehicle, causing death, the culpability of the other driver is clear because each of the two drivers was inciting and encouraging the other to do an unlawful act. [Citations.] While in the case presently before this court it cannot be said that defendant and a pursuing officer were acting in concert, it is manifest that defendant could reasonably foresee that his conduct would provoke pursuit by an officer in the performance of his duty [citation] and that it was probable that his conduct of fleeing from the officer at great speeds along city streets would result in a collision, either of his vehicle or that of the officer, with a pedestrian or a third vehicle."

[15]*Ante,* page 596.

534].) A jury might reasonably find that defendants negligently and wrongfully initiated a race which ended in injury to plaintiff.

The judgment is reversed.

Wood, P. J., and Thompson, J., concurred.