Raymond Michael CIMO,
Plaintiff–Appellant,

v.

IMMIGRATION & NATURALIZATION SERVICE; United States of America; Stephen H. Peterson, Defendants–Appellees.

No. 92–55811.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 5, 1994.

Decided Feb. 17, 1994.

Dennis J. Mahoney, MacLachlan, Burford & Arias, San Bernardino, California, for the plaintiff-appellant.

Mary A. Sedgwick, Assistant United States Attorney, Los Angeles, California, for the defendants-appellees.

Before: GOODWIN and HALL, Circuit Judges; and TANNER, District Judge.*

* The Honorable Jack E. Tanner, United States District Judge for the Western District of Washington, sitting by designation.

GOODWIN, Circuit Judge:

Raymond Michael Cimo appeals from a judgment finding the Immigration and Naturalization Service and the United States ("defendants") not liable in his action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2679. We affirm.

In the early morning hours on March 14, 1989, a fleeing suspect pursued by U.S. border patrol agents broadsided Mr. Cimo's vehicle, causing him serious and permanent injuries. The suspect, defendant Stephen H. Peterson, had been driving a stolen Mazda and was attempting to elude arrest at the time of collision.

Shortly before the crash, a border patrol agent had begun watching Peterson when he exited Interstate 15 at Rainbow Canyon Road. Peterson had stopped at a stop sign at the bottom of the offramp and had remained there several minutes, despite the early hour and the absence of other traffic to impede his travel. Peterson then proceeded northbound on Rainbow Canyon Road, bypassing the U.S. border patrol checkpoint on the I–15. Border Patrol Agent David Garrett decided to follow the vehicle, believing that it might be involved in an alien smuggling operation.

When the Mazda approached a back-up border patrol vehicle stationed at a nearby intersection, Garrett radioed ahead and asked the agents to illuminate the Mazda with their headlights to examine the occupants. Agents Jonathan King and William A. Brett did so, and believing the occupants to look nervous, they radioed to Garrett that an immigration inspection would be appropriate.

Garrett continued to follow the car as it reentered the I–15 freeway northbound after the checkpoint. Agents Brett and King followed Garrett's vehicle. Because the route used by the Mazda driver was a common route of alien smugglers, Garrett decided to stop the vehicle and question the occupants. He signaled the Mazda to pull over, which it

did. However, as he approached the car, the car suddenly accelerated and sped away.

The border patrol agents then instituted a high-speed chase of the Mazda on I–15. The freeway pursuit lasted approximately two minutes and covered about 2.7 miles, at speeds of up to 100 miles per hour. Peterson then exited the freeway at Winchester Road, traveling an estimated 60 to 70 miles per hour. Peterson ran the stop sign at the bottom of the offramp, and his car broadsided Mr. Cimo's car. Peterson and his passenger attempted to flee the scene, but were apprehended by the border patrol agents in a nearby field.

In December 1990, Mr. Cimo filed this complaint for damages for personal injuries against the INS, the United States, and Peterson, who was never served with the complaint. After a three-day bench trial, the district court found that U.S. border patrol agents had acted reasonably and non-negligently in initiating and conducting the pursuit. We review a district court's finding of negligence for clear error, *Vollendorff v. United States*, 951 F.2d 215, 217 (9th Cir. 1991), and we affirm.

Under the Federal Tort Claims Act ("FTCA"), the court must determine whether the United States is subject to tort liability by applying the law of the state "where the act or omission occurred." 28 U.S.C. § 1346(b); *Wright v. United States*, 719 F.2d 1032, 1034 (9th Cir.1983).

■ When the United States is sued for the actions of federal law enforcement officers, we examine the liability that state law attaches to similar activities undertaken by state and municipal police. *Aguilar v. United States*, 920 F.2d 1475, 1477 (9th Cir.1990) (divided court applies Nevada's $50,000 cap on liability for state employee's torts to a finding of liability against a federal police officer); *Doggett v. United States*, 875 F.2d 684, 689 (9th Cir.1989) (California law defines whether a U.S. Navy enlisted man was acting within the scope of employment); *Louie v. United States*, 776 F.2d 819, 824–25 (9th Cir.1985) (court must examine Washington law to decide whether the United States had a duty to control an intoxicated, off-duty serviceman).

■ Under California law, a public entity can be held liable for the actions of its law enforcement officers if they operate their vehicles in a negligent manner. Cal.Veh. Code § 17001. However, a public entity cannot be held liable for an officer's decision to engage in a chase because that decision is protected by a species of governmental immunity. *City of Sacramento v. Superior Court*, 131 Cal.App.3d 395, 182 Cal.Rptr. 443, 449 (1982); *Bratt v. City and County of San Francisco*, 50 Cal.App.3d 550, 123 Cal.Rptr. 774, 776 (Ct.App.1975).

We need not decide in this case whether the federal government can be held liable for its officers' decision to pursue Peterson's car because, as the district court found, the agents' decision to initiate the pursuit here was reasonable under the law enforcement circumstances existing at the time.

The next issue is whether the agents, having decided to pursue Peterson's fleeing automobile, did so in an unreasonable (or negligent) manner. The district court found that they did not. That was a finding of fact reviewable for clear error under Federal Rule of Civil Procedure 52.

■ As the district court noted, a high-speed chase is neither unlawful nor per se unreasonable. The test is whether the conduct of the officers exposed third parties to an *unreasonable* risk of harm. *City of Sacramento*, 182 Cal.Rptr. at 449. Under the circumstances existing in the case at bar, the officers' conduct did not unreasonably expose nonparticipating motorists to harm. The officers initiated the chase upon a flat stretch of freeway, not upon surface streets that are characterized by stop signals and intersections. The freeway traffic was very light at the time of the pursuit, and the roadway dry. Further, the suspect did not make sudden lane changes to indicate dangerous driving prior to the crash.

■ Nevertheless, the plaintiff contends that regardless of the officers' actual conduct, it was unreasonable for the officers to continue pursuing Peterson because the risk of injury to third parties outweighed the need for immediate apprehension. The

plaintiff argues that, in fact, there was no need for immediate apprehension. Plaintiff argues that federal officers have no power to arrest motorists for the state-law crime of auto theft or for the reckless driving involved in initiating a chase. Plaintiff then argues that the officers were negligent in continuing a pursuit they had no authority to start.

We disagree. Whether or not the officers had authority to apprehend Peterson for non-federal offenses, they had full federal authority to investigate their suspicion of alien smuggling, which prompted the initial stop. Indeed, the officers had a duty to attempt to apprehend Peterson once he fled. *See West v. United States,* 617 F.Supp. 1015, 1017–18 (C.D.Cal.1985) (border patrol agents had a legal obligation to pursue suspected alien smuggler who attempted to evade immigration checkpoint). Under these circumstances, the court could properly find that officers were not negligent in continuing their pursuit of Peterson.

**AFFIRMED.**