**Toni L. JOHNSON, Plaintiff,**

**v.**

**Cynthia L. GROB, et al., Defendants.**

**No. 95–0442–CV–W–1.**

United States District Court, W.D. Missouri, Western Division.

May 14, 1996.

Jonathan A. Bortnick, Kansas City, MO, for plaintiff.

Alleen S. VanBebber, Assistant United States Attorney, Kansas City, MO, Gay L. Tedder, Shook, Hardy & Bacon, Kansas City, MO, Dale H. Close, Legal Advisor, Police Board, Kansas City, MO, for defendants.

## OPINION AND ORDER

WHIPPLE, District Judge.

Pending before the Court is the motion of Defendants Cynthia L. Grob, Special Agent of the United States Bureau of Alcohol, Tobacco, and Firearms, James P. Ripley, Cor-

poral of the Missouri State Highway Patrol, and the United States of America to dismiss or, in the alternative, for summary judgment. This action involves a roadblock set up by Special Agent Grob and Officer Ripley to intercept Plaintiff Johnson's car with the intention of arresting Johnson's passenger, Ann Marie Mitchell, on outstanding state arrest warrants for aggravated assault and armed criminal action. The officers blocked the car's way, drew their guns, and pointed them at Johnson and Mitchell. Unfortunately, the officers were not identified as officers: they wore plainclothes, had an unmarked car, and did not sound their siren. Johnson stopped the car briefly, yet the officers did not identify themselves as such until Johnson, in a panic, reversed her car in an attempt to flee. Johnson backed into another car, flipped over, and was then pulled from the car, handcuffed, laid down in the street. Johnson was taken to a hospital and afterwards released. A Kansas City policeman subsequently prosecuted Johnson for improper backing of a motor vehicle, of which she was found not guilty.

Ms. Johnson alleges five counts, respectively: violations of her rights under the Fourth Amendment of the United States Constitution, assault, battery, false arrest, and malicious prosecution. On Johnson's claims under the Fourth Amendment, the Court finds that a reasonable juror could find for Johnson because the officers recklessly failed to identify themselves as officers of the law. Nevertheless, the Court dismisses these claims because they are barred by qualified immunity.[1] The Court defers ruling on the state law counts to allow the parties to submit briefs on these issues in light of the Court's constitutional rulings. Having decided the constitutional question, the Court also lifts the stay on discovery.

## I. FACTS

In recounting the following facts, the Court gives the benefit of all doubts and reasonable inferences to Ms. Johnson. *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir.1991).

Around noon-time on March 2, 1992, Toni Johnson parked her car outside of a housing project and entered the building to visit with her friend of two years, Ann Marie Mitchell. A short time later, the two friends left the building, entered Johnson's car, and drove away. Johnson was at the steering wheel. She did not speed or commit any traffic violations.

Another car quickly blocked Johnson's way. A man and a woman exited that car, drew their guns, and pointed them at Johnson's car. Nothing about her assailants alerted Johnson that they were actually officers of the law: they wore plainclothes, their car was unmarked, and they did not sound a siren. They were not heard by Johnson to identify themselves as law enforcement, although the man claims to have shouted either "Freeze, Police!" or "Halt, Police!", and his partner confirms this. His partner admits that she did not identify herself.

In fact, the woman was Cynthia Grob, a Special Agent with the United States Bureau of Alcohol, Tobacco and Firearms, and the man was James Ripley, a Corporal with the Missouri State Highway Patrol who was deputized by the United States Marshals Service. Ripley and Grob were participating in Operation Gunsmoke, an effort to arrest and prosecute individuals wanted on outstanding federal and state arrest warrants, specifically for significant narcotics and firearms violations. At the time, Ripley and Grob were attempting to find and arrest Johnson's passenger, Mitchell, on an outstanding state warrant for aggravated assault and armed criminal action. The officers had recently spoken with Mitchell's mother and sister about Mitchell's whereabouts; these inquiries had occurred at the very housing project

---

1. Comparing the vast number of pages spent analyzing the constitutional issue to the few pages devoted to the immunity issue might imply to some that the Court should have disposed of this case solely on the qualified immunity issue and thus avoid the constitutional questions entirely. Taking this course, however, would let the tail wag the dog. Questions of qualified immunity usually focus on whether a constitutional right was clearly established at the time of the alleged conduct, an inquiry centered on hindsight. For constitutional law not to stagnate, courts must also establish what constitutional rights exist in the present and the future.

from which the officers had just observed Mitchell and Johnson leaving.

The officers do not now suspect Johnson of any wrongdoing. Their affidavits imply, however, that at the time they shadowed Johnson and Mitchell, the officers worried that Mitchell knew of the officers' inquiries and that Johnson was helping Mitchell escape their pursuit. Johnson, on the other hand, asserts that she first learned of Mitchell's criminal involvement after her car was stopped, when she heard the officers tell Mitchell they suspected her of bringing drugs to Missouri from Georgia.

Upon seeing her way blocked by gun-wielding assailants, and fearing for her life, Johnson shifted her car in reverse and backed into a parked car. Her car flipped over, shattering glass over Johnson. Officer Ripley and Special Agent Grob had followed respectively on foot and by car, Grob doing so only after radioing for assistance. Officer Ripley pulled and dragged Johnson from the overturned car, handcuffed her, and had her lie down in the street. Nobody hit Johnson. During the ambulance ride to the hospital, Special Agent Grob searched both Johnson's and Mitchell's purses. After Johnson was treated at the hospital, she was released. She sustained cuts, bruises, and other physical injuries, as well as post-traumatic stress disorder.

Police Officer Larry Brennaman issued Ms. Johnson a citation for improperly backing up her vehicle. Ms. Johnson was found not guilty of improper backing.

Johnson now sues Officer Ripley and Special Agent Grob for violating her Fourth Amendment rights (Count I), assault (Count II), battery (Count III), false arrest (Count IV), and malicious prosecution (Count V).[2]

## II. STANDARD FOR SUMMARY JUDGMENT

■ Because the Court has found it necessary to refer to the testimony submitted by the parties, albeit infrequently, the Court treats this motion as one for summary judgment. *See* Fed.R.Civ.P. 12(b), (c). A mov-

ant is entitled to summary judgment if there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proof. *Aetna Life Ins. Co. v. Great Nat'l Corp.*, 818 F.2d 19, 20 (8th Cir.1987). When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party and "give [the nonmoving party] the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir.1991).

■ Once the moving party discharges its initial burden, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The moving party may not "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

## III. FOURTH AMENDMENT CLAIMS

■ To show a violation of her Fourth Amendment rights, Johnson must show that she was subjected to a seizure, that the seizure was unreasonable, and that the unreasonable seizure was the proximate cause of her injuries. *See Galas v. McKee*, 801 F.2d 200, 202 (6th Cir.1986); *cf. Cole v. Bone*, 993 F.2d 1328, 1332–1334 (8th Cir.1993) (following this analytical process, without reaching proximate cause). All three elements must be proved, and in the order set out. *Galas*, 801 F.2d at 202.

### A. Whether and When There Was a Seizure

■ A seizure occurs if law enforcement officers applied physical force to the subject of the putative seizure or if law enforcement made a show of authority to which the subject submitted. *California v. Hodari D.*, 499 U.S. 621, 626, 111 S.Ct. 1547, 1550–51, 113

---

**2.** In its Order of November 14, 1995, the Court dismissed the claim of malicious prosecution

against Officer Brennaman because the statute of limitations had run on that claim as to him.

L.Ed.2d 690, 697 (1991); *accord Ludwig v. Anderson*, 54 F.3d 465, 471 (8th Cir.1995). "A seizure is a single act, and not a continuous fact." *Thompson v. Whitman*, 85 U.S. (18 Wall.) 457, 471, 21 L.Ed. 897, 902 (1874), *quoted in Hodari D.*, 499 U.S. at 625, 111 S.Ct. at 1550, 113 L.Ed.2d at 697. Therefore, the Court does not ask whether there was a seizure in general, but instead determines whether a seizure existed at each discrete moment or event.

The threshold issue, therefore, is whether Grob and Ripley applied physical force to Johnson or engaged in a successful show of authority when they blocked Johnson's way, exited their car, drew their guns, and pointed them at Johnson's car, or when Johnson's car overturned after she backed into a parked car, or when Johnson was pulled from her overturned car, handcuffed, made to lie down in the street, and accompanied during the ambulance ride to the hospital, or when her purse was searched. The Court takes these events in turn.

### 1. Roadblock with drawn guns, through the car crash

■■■ The Court rejects Johnson's initial argument that she was seized the moment the officers set up the roadblock and trained their guns on her car. Without more, such actions do not constitute an application of physical force. A seizure occurs by reason of physical force only when an action intended to result in physical force actually results in physical contact, no matter how brief. *See Hodari D.*, 499 U.S. at 626–27, 111 S.Ct. at 1550–51, 113 L.Ed.2d at 697 ("There can be no arrest without either *touching* or submission.") (citation omitted) (emphasis added); *id.* 499 U.S. at 626 n. 2, 111 S.Ct. at 1550–51 n. 2, 113 L.Ed.2d at 697 n. 2 (noting that *Hodari D.* expands the definition of seizure to include "the mere touching of a person"). *E.g., Cole v. Bone*, 993 F.2d 1328, 1333 (8th Cir.1993) (holding that no seizure occurred

until the officers' bullets hit the suspect); *Fontenot v. Cormier*, 56 F.3d 669, 674–76 (5th Cir.1995) (characterizing as shows of authority when officers with guns drawn confronted suspects).[3] Here, no physical contact occurred when the officers first set up the roadblock and aimed their guns. Accordingly, the officers' initial actions did not constitute a seizure by physical force. Nor were the officers' initial actions, without more, a successful show of authority: at the earliest, their show of authority was successful only when Johnson stopped her car. Thus, there was no seizure when the officers *initially* blocked Johnson's way and raised their weapons.

Johnson argues, nonetheless, that she was seized at a later point, perhaps when Johnson put her car in reverse, drove backwards, hit the parked car and flipped over. Grob and Ripley respond that Johnson was not seized then because the law defines seizures to hold Johnson responsible for injuries sustained while fleeing a legitimate roadblock.

Essentially, each side likens this case to a line of cases dictating a result in their favor. Johnson likens her case to *Brower v. County of Inyo*, 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989), and others holding that a seizure occurs when law enforcement officers set up a roadblock that causes the suspect to have an accident. *E.g., Buckner v. Kilgore*, 36 F.3d 536 (6th Cir.1994) (affirming denial of qualified immunity for unreasonable roadblock). Grob and Ripley, on the other hand, predictably liken the case to *California v. Hodari D.*, 499 U.S. 621, 626, 111 S.Ct. 1547, 1550–51, 113 L.Ed.2d 690, 697 (1991), and others holding that no seizure occurs when a suspect gets hurt when he flees from police authority. *See id.*, 499 U.S. at 626, 111 S.Ct. at 1550–51, 113 L.Ed.2d at 697 ("[The word 'seizure'] does not remotely apply, however, to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that

---

**3.** *Edwards v. Giles*, 51 F.3d 155 (8th Cir.1995) states that "[the officer's] conduct in drawing his gun and pointing it at [the suspect], *without any indication [the officer] intended or attempted to fire the gun*, does not rise to the level of a constitutional violation." *Id.* at 157 (emphasis added). By negative implication, the emphasized language suggests that a seizure can occur

through physical force and without physical contact when an officer points his gun at a suspect and indicates that he intends to fire it or actually attempts to do so. Here, however, the uncontroverted facts do not show that the officers indicated an intention to fire or actually attempted to do so. Hence, even if the Court has correctly identified the rule in *Edwards*, it does not apply here.

continues to flee. That is no seizure.") (footnote omitted); *id.*, 499 U.S. at 625, 111 S.Ct. at 1550, 113 L.Ed.2d at 696–97 (noting that an arrest does not continue if the suspect breaks away after physical force is applied). *See also Galas v. McKee,* 801 F.2d 200, 202–03 (6th Cir.1986), *cited with approval in Brower v. County of Inyo,* 489 U.S. at 595–96, 109 S.Ct. at 1380–81, 103 L.Ed.2d at 635; *Cole v. Bone,* 993 F.2d 1328, 1332–33 (8th Cir.1993); *U.S. v. Holloway,* 962 F.2d 451, 458 (5th Cir.1992) (holding that a roadblock, alone, without a collision, is not an application of physical force, where suspect reversed from roadblock manned by identified officers and then crashed into another car).[4]

■ This is not an easy question, but the Court sides with Johnson in holding that she was seized when she fled the officers' roadblock and guns. Key to this holding is the fact that Johnson was unaware that these people were officers of the law, but rather reasonably believed that her assailants were armed robbers.

a. *Brower v. County of Inyo*—The Unreasonably Implemented Roadblock

In Johnson's favor, this case is like, albeit at the outer limits of, *Brower v. County of Inyo,* 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). In *Brower,* police chased a car thief at night. To block the thief's escape, other police positioned an 18-wheel tractor-trailer across both lanes of his escape route, concealed the roadblock by hiding it behind a curve in the road and leaving it unilluminated, and blinded the thief by shining a police car's headlights directly into his face. *Id.,* 489 U.S. at 594, 109 S.Ct. at 1379–80, 103 L.Ed.2d at 634. The Supreme Court held that a seizure occurred when the thief crashed into the roadblock. The Court

distinguished that case from those in which a fleeing suspect had an accident not intended by the police:

> [A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of movement *through means intentionally applied.*

*Id.,* 489 U.S. at 596–97, 109 S.Ct. at 1381, 103 L.Ed.2d at 635. A seizure occurred because the government had terminated the pursued's movement with the truck, which was what they intended to do. *Id.,* 489 U.S. at 598–99, 109 S.Ct. at 1382–83, 103 L.Ed.2d at 636–37.

Assume for purposes of argument that Brower, in a state of panic, had not crashed into the roadblock but had instead swerved off the road and into a tree. At that point, Brower would still have been seized as a result of the crash. His movement would still have been terminated "through means intentionally applied", as is required by *Brower,* 489 U.S. at 596–97, 109 S.Ct. at 1381–82, 103 L.Ed.2d at 635 (emphasis omitted), in the sense that the roadblock would still have been the intentional and proximate cause of the accident. The driver's quick reflexes do not destroy the causation between the roadblock and the accident. The Supreme Court was unconcerned in *Brower* that the police intended that the pursued be stopped in precisely the manner that occurred; for the purposes of determining whether a seizure occurred, it was sufficient that the police intended him to be stopped

**4.** The Court cites *Holloway* for the proposition that a roadblock alone is not an application of physical force. The Ninth Circuit, in *U.S. v. Hernandez,* 27 F.3d 1403, 1406 (9th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1147, 130 L.Ed.2d 1106 (1995), construed *Holloway* as holding to the contrary because *Holloway* states that " 'blocking [the defendant's] path of direction constituted … an application of physical force' ", *id.* (citing *Holloway,* 962 F.2d at 456). Regrettably, the Ninth Circuit mistook this language as the *Holloway* court's holding, rather than as a position advocated by, and clearly attributed to, the defendant, *see Holloway,* 962 F.2d at 456 (*"According to Holloway,* … blocking Holloway's path of direction constituted such an application of physical force.")ʹ (emphasis added). Later in the opinion, the *Holloway* court rejected the quoted position. *See id.* at 456–58 (interpreting *Hodari D.* to mean that there is no application of physical force until there is touching). Therefore, *Hernandez* is incorrect in say-

by the roadblock and that he was. *Id. See Buckner*, 36 F.3d at 540 ("[A]n officer violates a clearly established right under *Brower* if he pulls his squad car onto a highway with knowledge or reason to know that an approaching [motorist] will not have time or the ability to stop *or otherwise safely avoid collision with the car.*") (emphasis added).

To what extent does this hypothetical case, governed by *Brower*, differ from the case at bar? Johnson argues there is no difference: she crashed after fleeing reflexively to avoid armed attackers, and the officers intended her to stop.

b. *California v. Hodari D.*—Flee Law Enforcement at Your Own Risk

Grob and Ripley, on the other hand, argue that the present case differs from the hypothetical because Johnson fled the official roadblock of her own volition, while the suspects in *Brower* and the hypothetical case crashed inevitably or because danger was imminent. In sum, Grob and Ripley argue that their roadblock was only a show of authority to which Johnson did not submit, and not a seizure under *Hodari D.*

 Even taking Grob and Ripley's argument on its own terms, they are mistaken in claiming that there was no seizure. Any submission to a show of authority, no matter how brief, constitutes a seizure for the duration of the submission. *U.S. v. Morgan*, 936 F.2d 1561, 1567 (10th Cir.1991), *cert. denied*, 502 U.S. 1102, 112 S.Ct. 1190, 117 L.Ed.2d 431 (1992); *cf. Hodari D.*, 499 U.S. at 625, 111 S.Ct. at 1550, 113 L.Ed.2d at 697. *But see U.S. v. Hernandez*, 27 F.3d 1403, 1406–07 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1147, 130 L.Ed.2d 1106 (1995). Here, Johnson saw the roadblock and reversed, but only after stopping first. So even under their argument, there was a seizure, albeit a brief one.

 Grob and Ripley continue, however, by contending in effect that Johnson revoked her submission by fleeing. Language in *Hodari D.* provides some support:

To say that an arrest is effected by the slightest application of physical force, despite the arrestee's escape, is not to say that for Fourth Amendment purposes there is a *continuing* arrest during the period of fugitivity.

*Hodari D.*, 499 U.S. at 625, 111 S.Ct. at 1550, 113 L.Ed.2d at 696. The problem with Grob and Ripley's argument is that Johnson was unaware of the officers' authority. The test for a proper show of authority is "'not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person'". *U.S. v. Holloway*, 962 F.2d 451, 456 n. 9 (5th Cir.1992) (citing *Hodari D.*, 499 U.S. at 628, 111 S.Ct. at 1551–52, 113 L.Ed.2d at 698). Implicit in this definition is the requirement that the officers reasonably convey that the officers have legal authority to order compliance.[5] *See Holloway*, 962 F.2d at 456 n. 9 (holding that there was a proper show of authority at a roadblock involving plainclothes officers in an unmarked car when one officer showed his badge and both verbally identified themselves). In the present case, the officers displayed no indicia of authority. They wore plainclothes. Their car was unmarked. They did not sound a siren. Johnson did not hear Ripley identify himself and Grob as officers, and reading Johnson's deposition testimony liberally, and taking all facts in her favor, Ripley may not even have identified himself. Grob definitely did not attempt to do so. Accordingly, Johnson has a good argument this case is not governed by *Hodari D.* because the officers had not showed their "authority" before she fled.

As was stated above, *Hodari D.* defines as seizures only applications of physical force and successful shows of authority. This definition neglects cases where a person is injured fleeing from an unidentified officer who made a show of aggression but did not make actual physical contact. Such cases exist: this case is one, and others include *Sparks v. City of Compton*, 64 Cal.App.3d 592, 134

---

ing that *Holloway* equates a roadblock alone to physical force.

5. By "legal authority", the Court means some signal that the officers are officers of the law: a

badge, a uniform, a marked car, flashing police lights, or even shouting "Police!". The Court does not suggest that the officers need to convince the citizen that their actions are legal.

Cal.Rptr. 684 (1976) (reversing summary judgment, where innocent motorist alleged he was injured by car fleeing plainclothes officers in unmarked car who had scared motorist by leaving their car in a threatening manner, brandishing their guns, and then chasing the fleeing motorist) (state law); *Poole v. City of Louisville,* 107 Ga.App. 305, 130 S.E.2d 157 (1963) (reversing dismissal of claim by motorist alleging injury from losing control of his vehicle while fleeing unidentified police in unmarked car not flashing its lights or sounding its siren, all at night) (state law). *Hodari D.'s* statement that "[a]n arrest requires *either* physical force ... *or,* where that is absent, *submission* to the assertion of authority," 499 U.S. at 626, 111 S.Ct. at 1550–51, 113 L.Ed.2d at 697 (citation and internal quotes omitted), taken literally would appear to hold these cases involving escape from unidentified plainclothes officers not to be seizures.

But there is no reason to take *Hodari D.* so literally. *Hodari D.* does not concern plainclothes arrests. Moreover, sound legal reasons show that the better rule is that suspects fleeing from unidentified plainclothes officers are seized for the purposes of the Fourth Amendment. Two reasons support this holding. First, to hold such events not to be seizures would increase the incentive for law enforcement officers to escape potential liability by apprehending subjects without first identifying themselves as officers of the law. But the interests of orderly law enforcement and the safety of suspects, innocent bystanders and the officers themselves counsel against such a result. Long experience shows that officers should defer their identification as officers only when necessary. *Cf. Wilson v. Arkansas,* 514 U.S. ——, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995) (holding that, to diminish the potential for violence, the Fourth Amendment reasonableness inquiry includes the common law principle that police must "knock and announce" before they break open the doors of a dwelling to carry out a search or arrest warrant); *see also St. Hilaire,* 71 F.3d 20, 23 (1st Cir.1995) (suspect shot after a plainclothes detective drew his gun on suspect and suspect responded by moving for his own gun; suspect repeatedly stated that he had moved

for his gun because he was unaware his assailants were police); *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 557–561 (1st Cir.1989) (affirming compensatory and punitive damages against plainclothes officers in unmarked police car who, with guns drawn, approached car whose occupants were engaged in no wrongdoing, and shot at car when driver became scared and drove away, thus leaving driver a paraplegic); *Carter v. Rogers,* 805 F.2d 1153, 1157–58 (4th Cir.1986) ("A jury might reasonably think it excessive for a law enforcement officer to ... conclude that further verbal warnings, including belated identification of defendant McClain as a law enforcement officer, were due before McClain could justify a second blast."); *Beran v. U.S.,* 759 F.Supp. 886, 888–890, 894 (D.D.C.1991) (one Secret Service agent dragged 65 feet when plaintiff put his car in reverse to escape his attack, denying summary judgment where it was unclear whether Secret Service agents in an unmarked car had identified themselves, and agents blocked plaintiff's car and struck him); *Agresta v. Gillespie,* 158 Pa.Cmwlth. 230, 631 A.2d 772 (1993) (decedent fleeing from plainclothes officers in an unmarked car who attempted to arrest decedent by blocking his way and jumping out their car at him in a parking lot, then killed by shotgun blast from officers pursuing in unmarked cars not using lights or sirens) (state law), *overruled on other grounds, Gray v. Southeastern Pa. Transp. Auth.,* 534 Pa. 467, 633 A.2d 1090 (1993) (state law); *Stack v. State,* 534 N.E.2d 253 (Ind.Ct.App.1989) (reversing conviction of defendant arrested for resisting law enforcement because defendant had no reason to know that plainclothes assailant was an officer); *Kyle v. City of New Orleans,* 342 So.2d 1257, 1260–61 (La.Ct.App.) (acknowledging that plaintiff/suspect probably thought he was being robbed) (state law), *rev'd on other grounds,* 353 So.2d 969 (La. 1977) (finding that police used excessive force, but without relying specifically on officer's failure to identify themselves); *Sparks, supra; Grudt v. City of Los Angeles,* 2 Cal.3d 575, 86 Cal.Rptr. 465, 468 P.2d 825 (1970) (decedent killed by officer while trying to escape armed plainclothes officer) (state law); *Celmer v. Quarberg,* 56 Wis.2d 581, 203

N.W.2d 45 (1973) (affirming jury's verdict that arrest was negligently implemented when plaintiff resisted arrest and fled undercover plainclothes officers, who then injured plaintiff) (state law); *Poole, supra.* Defining seizures to include cases where suspects flee unidentified officers of the law gives officers the proper incentive to identify their authority at a reasonable time.

Second, *Hodari D.* is a functional rule intended to deter suspects from fleeing from law enforcement officers when officers order them to stop. *Hodari D.*, 499 U.S. at 627, 111 S.Ct. at 1551, 113 L.Ed.2d at 697–98 ("[C]ompliance with police orders to stop should ... be encouraged."). Citizens will usually comply with such a command when it comes from an identified officer; those who flee are responsible when they crash precisely because they decided to avoid justice. But a suspect who is unaware that her assailants are agents of the law does not decide to avoid justice, but rather to avoid unlawful injury. *Cf. Mackinney v. Nielsen*, 69 F.3d 1002, 1005–07 (9th Cir.1995) (reversing summary judgment, holding that officer has no probable cause to arrest citizen for resisting arrest where citizen did not know person making the arrest was a police officer) (state law); *Sparks*, 134 Cal.Rptr. at 689 ("Only the knowledge (or grounds therefor) of the officer's authority imposes on an arrestee the obligation to yield without resistance.") (state law). It would be foolish to require citizens to assume that armed assailants are law enforcement officers rather than malicious hooligans. A suspect who swerves to avoid an unreasonable roadblock chooses not to flee justice but to save his life, as in the hypothetical discussed above; this is just as true of a citizen who flees an official roadblock ignorant that his assailants are agents of the law.

For all these reasons, this crash constitutes a seizure under *Brower* because it was caused by an arguably unreasonable roadblock set up by the police. The crash also constitutes a seizure under *Hodari D.* because physical force, *i.e.*, the crash, was applied as a consequence of the officers' actions but not as a consequence of a valid show of authority.

### 2. Subsequent Detention, Handcuffing, and Search of Plaintiff's Purse

 It needs no extensive discussion to hold that Johnson was seized after her car flipped over, when she was pulled from the overturned car, handcuffed, and made to lie down in the street. Nor is it necessary to discuss that Johnson's purse was seized when her purse was searched by Special Agent Grob. Each of these were applications of physical force constituting seizures.

### B. Nature of the Seizures—Arrests or Investigative Stops

 The next issue is how to classify the nature of the seizures. There are three types of encounters between law enforcement officers and citizens: consensual encounters, investigative stops, and arrests. No bright line separates investigative stops from arrests. *U.S. v. Bloomfield*, 40 F.3d 910, 916 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1970, 131 L.Ed.2d 859 (1995). Rather, a *de facto* arrest occurs when "the officers' conduct is more intrusive than necessary for an investigative stop", *id.* at 916–17 (citation and internal quotes omitted), that is, to investigate whether criminal activity occurred, is occurring, or will occur soon. Factors contributing to intrusiveness include (1) the length of its duration, i.e., whether it continues longer than is necessary to investigate whether there is or was criminal wrongdoing; (2) the fear or humiliation the officers' conduct is likely to create in the suspect; (3) whether the suspect was transported to another location or isolated from others; and (4) whether the suspect was forcibly detained by being handcuffed or confined in a police car. *Id.* at 917. The fact that the officers brandish weapons does not *per se* turn an investigative stop into an arrest, *U.S. v. Lloyd*, 36 F.3d 761, 763 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1325, 131 L.Ed.2d 205 (1995), although the brandishing of weapons is relevant as conduct likely to create fear in the suspect.

### 1. Roadblock with drawn guns, through the car crash

 It appears uncontested that the roadblock constituted an arrest of Mitchell,

but it is ambiguous whether the roadblock constituted an arrest or investigative stop as to Johnson. Were it forced to classify this seizure as it was initially conceived, however, the Court would classify the roadblock as an investigative stop of Johnson. Favoring arrest is the fear or humiliation the officers' conduct was likely to create in Johnson, especially because the officers did not identify their authority. Favoring an investigative stop, however, are the facts that the roadblock did not involve transporting Johnson or isolating her from others, and that Johnson was not forcibly detained by being handcuffed or confined until after her car had turned over. Ambiguous is the time the roadblock would take, especially in light of the unanticipated results. On these confusing facts, the Court finds the roadblock as it was initially set up to be an investigative stop of Johnson. In effect, however, this does not matter precisely because, as the Court discusses below, the officers had probable cause to arrest Mitchell and stop Johnson's car.

### 2. Post-accident seizures

More importantly, the parties debate whether Johnson was under arrest at any time after her car flipped. She alleges that she was under arrest when she was handcuffed and laid in the street until she was released from the hospital. The Court agrees. On similar circumstances, the Tenth Circuit found an arrest when a police officer drew her gun on a suspect, threatened to shoot him if he did not leave his car, had backup officers surround the car with weapons drawn, and other officer forced the suspect to his knees and handcuffed him. *U.S. v. King*, 990 F.2d 1552, 1562–63 (10th Cir.1993). Although handcuffing does not necessarily turn an investigative stop into an arrest, *see Bloomfield*, 40 F.3d at 916, handcuffing is a significant contributor to intrusiveness. Moreover, laying Johnson in the street was more intrusive and capable of producing fear than was necessary to learn whether Johnson was wanted on any outstanding warrants or whether she was trying to help Mitchell escape. One factor counsels against finding this was an arrest: Johnson appears not to have been detained longer than was necessary to determine whether she was involved in any wrongdoing. Nevertheless, this factor does not outweigh the others. As in *King*, Johnson was under arrest.

### C. Lawfulness and Reasonableness of the Seizures

All claims that a law enforcement officer has used excessive force during an arrest, investigatory stop, or other seizure are analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443, 454 (1989). The standard is whether the officer's actions were reasonable "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight". *Id.*, 490 U.S. at 396, 109 S.Ct. at 1871–72, 104 L.Ed.2d at 455. This is a test of objective reasonableness, to be determined without regard to the officers' subjective intent or motivation. *Id.*, 490 U.S. at 397, 109 S.Ct. at 1872–73, 104 L.Ed.2d at 456. Objective reasonableness is evaluated with "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*, 490 U.S. at 396, 109 S.Ct. at 1871–72, 104 L.Ed.2d at 455. The analysis must recognize that police "are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.*, 490 U.S. at 397, 109 S.Ct. at 1872–73, 104 L.Ed.2d at 456.

The seizure must also be adequately justified with probable cause for an arrest, and a reasonable suspicion of criminal activity for an investigative, *Terry* stop. *U.S. v. Johnson*, 64 F.3d 1120, 1124 (8th Cir.1995) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889 (1968)), *cert. denied*, —— U.S. ——, 116 S.Ct. 971, 133 L.Ed.2d 891 (1996). Probable cause is "evidence which would 'warrant a man of reasonable caution in the belief' that a felony has been committed". *Wong Sun v. U.S.*,

371 U.S. 471, 479, 83 S.Ct. 407, 412–13, 9 L.Ed.2d 441, 450 (1963). A reasonable suspicion, while less than probable cause, is more than a mere conjecture or hunch. *U.S. v. Poitier,* 818 F.2d 679, 683 (8th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 651 (1988). Instead, the suspicion must be based on articulable facts construed with the totality of the circumstances evaluated from the view of an officer of experience similar to the officer who made the stop, *see id.; Johnson,* 64 F.3d at 1124; *U.S. v. Condelee,* 915 F.2d 1206, 1209–10 (8th Cir.1990). In any event, the Court must balance the intrusiveness of the seizure against the government's interest in seizing. *See Terry,* 392 U.S. at 20–21, 88 S.Ct. at 1879–80.

### 1. Roadblock with drawn guns, through the accident

#### a. Justification

The officers did not have a warrant for Johnson's arrest. Johnson first contends that the officers lacked probable cause to block her way with their guns drawn. She acknowledges that the officers had probable cause to stop Mitchell, her passenger, but argues that this probable cause did not taint Johnson sufficiently to warrant a stop. Specifically, Johnson states that the officers had no evidence that she was helping Mitchell escape. For example, Johnson did not speed or drive in a manner indicating that she was fleeing from the law.

Ripley and Grob reply that whether Johnson was speeding is irrelevant. They had probable cause to stop Johnson, they say, by dint of necessity in order to stop Mitchell, and also because Johnson was helping Mitchell. Alternately, the officers maintain that they could believed that Johnson was transporting Mitchell under duress, which negated the need for probable cause to stop Johnson and safeguard her welfare.

▮▮▮ The Court holds that Ripley and Grob had adequate justification to stop Johnson. First, the officers needed no independent probable cause to stop Johnson herself because they were entitled to stop Johnson's car in order to arrest Mitchell. Police may stop an automobile to perform a *Terry* stop when they have a reasonable suspicion to believe that its occupants are violating the law. *U.S. v. Chhunn,* 11 F.3d 107, 109–10 (8th Cir.1993) (citing *U.S. v. Hensley,* 469 U.S. 221, 226, 105 S.Ct. 675, 678–79, 83 L.Ed.2d 604, 610 (1985)); *U.S. v. Watts,* 7 F.3d 122, 125 (8th Cir.1993) (holding that automobiles are subject to *Terry* stops), *cert. denied,* 510 U.S. 1078, 114 S.Ct. 895, 127 L.Ed.2d 88 (1994). *A fortiori,* when the police have probable cause to arrest a passenger. Therefore, an officer needs no cause to stop a particular occupant of a vehicle when the vehicle contains another occupant for whom the officers have probable cause to arrest. The government's need to arrest a passenger outweighs the third party's liberty interest, so long as the third party is not kept longer than is necessary. Were the rule otherwise, criminals could immunize themselves from being stopped in automobiles by always traveling with innocent third parties. Here, Ripley and Grob had probable cause to stop Johnson's car to get Mitchell, regardless of their suspicions of Johnson herself or lack thereof.

▮▮▮ Second, the officers needed no reason to investigate Johnson because they legitimately could have stopped the car to ascertain her safety and rescue her if necessary.[6] Law enforcement officers not only investigate crimes, but also perform " 'community caretaking functions, [which are] totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a statute' ". *U.S. v. King,* 990 F.2d 1552, 1560 (10th Cir.1993) (quoting *Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973)); *see generally King,* 990 F.2d at 1558–62. Community caretaking functions include stopping a citizen for his own safety, regardless of the officers' suspicion of criminal activity or lack thereof. *See U.S. v. Rideau,* 969 F.2d 1572, 1574 (5th Cir. 1992) (en banc) (officers stopping individual

---

6. It does not matter whether Ripley and Grob actually intended to rescue Johnson: objective reasonableness does not turn on the officers' subjective intent or motive. *Graham,* 490 U.S. at 397, 109 S.Ct. at 1872, 104 L.Ed.2d at 456.

standing in the middle of the road at night, dressed in dark clothes, and apparently intoxicated), *aff'g in relevant part and rev'g on other grounds* 949 F.2d 718, 720 (5th Cir.1991). The critical inquiry is whether the officers possessed " 'specific and articulable facts which ... reasonably warrant [an] intrusion' into the individual's liberty". *U.S. v. King,* 990 F.2d at 1560 (quoting *Terry,* 392 U.S. at 21, 88 S.Ct. at 1879–80). In the present case, the facts giving the officers probable cause as to Mitchell also gave them sufficient cause for a roadblock intended to safeguard Johnson.

▪ Third, the officers actually had a reasonable suspicion that Johnson herself was involved in criminal action. At the time of the stop, Ripley and Grob knew that (1) Johnson's passenger, Mitchell, was wanted on state arrest warrants for aggravated assault and armed criminal action; (2) Mitchell's mother and sister knew that the officers had inquired about Mitchell's whereabouts; and (3) these inquiries occurred at the very housing project from which Mitchell and Johnson had left. In Johnson's favor, the officers knew that Johnson was not speeding, and they had no reason to suspect her, other than the fact that she was then transporting Mitchell. These facts are probative, but not dispositive. Although Johnson's behavior and driving would be considered innocent in other contexts, it raised a reasonable suspicion in this context because her passenger seat contained a wanted felon. *See U.S. v. Sokolow,* 490 U.S. 1, 9–10, 109 S.Ct. 1581, 1586–87, 104 L.Ed.2d 1, 11–12 (1989) (" '[I]nnocent behavior will frequently provide the basis for a showing of probable cause' and ... '[i]n making a determination of probable cause the relevant inquiry is not whether the particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of noncriminal acts.' ") (second alteration in original); *Condelee,* 915 F.2d at 1209–10 ("[F]acts consistent with in-

nocent travel taken together may amount to reasonable suspicion if they have probative value (i.e., sufficient to warrant consideration)."). Under the totality of these circumstances, viewed through the eyes of law enforcement officers of Ripley and Grob's experience, the officers had a reasonable suspicion based on articulable facts to stop Johnson herself to determine whether she intended to help Mitchell flee.[7]

Thus, the Court concludes that Ripley and Grob possessed adequate justification to stop Johnson's car.

**b. Implementation**

▪ Johnson contends that the roadblock was unreasonable because the officers had ample opportunity to arrest Mitchell, the true subject of their surveillance, without involving Johnson, such as before Mitchell entered Johnson's car or before Johnson started driving. These facts are, however, irrelevant. An officer need not use the least intrusive investigatory techniques except to use the method most likely to dispel or confirm their suspicions of wrongdoing as quickly as possible. *Sokolow,* 490 U.S. at 10–11, 109 S.Ct. at 1587–88, 104 L.Ed.2d at 12. Except for this requirement to minimize a *Terry* stop's duration, the investigatory method need only be reasonable, not the most prudent. *Schulz v. Long,* 44 F.3d 643, 649 (8th Cir.1995) (citing *Graham v. Connor,* 490 U.S. at 396, 109 S.Ct. at 1871–72). Here, regardless of when the officers stopped Mitchell, they still had a reasonable suspicion to stop Johnson, and thus the right to do so. *A priori,* the officers could not have known that stopping Johnson before she and Mitchell entered the car would take appreciably less time than stopping them while they were driving. Moreover, the officers were entitled to defer the arrest just to see whether Johnson intended to help Mitchell flee. Accordingly, it is irrelevant that the officers could

---

7. The Court rejects, however, the officers' assertion that they had probable cause to arrest Johnson. Based on the facts listed above, at the time of the stop a reasonable officer would not have believed that there was a fair probability that Johnson intended to help Mitchell flee because she exhibited no intent to do so. The officers

had only a reasonable suspicion to investigate whether Johnson had any such intent. *See U.S. v. Everroad,* 704 F.2d 403, 406 (8th Cir.1983) ("[M]ere association with a known or suspected criminal, or mere presence in that person's automobile, does not create probable cause to arrest.").

have stopped Mitchell before she and Johnson drove away.

■ The next question is whether the stop was performed with reasonable force. Under *Graham v. Connor*, Officer Ripley and Special Agent Grob were entitled to use a fair amount of force. Factors indicating what force is reasonable "includ[e] the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor,* 490 U.S. at 396, 109 S.Ct. at 1871–72, 104 L.Ed.2d at 455. The analysis must recognize that police often must make quick decisions in dangerous circumstances and on incomplete, changing information. *Id.,* 490 U.S. at 397, 109 S.Ct. at 1872–73, 104 L.Ed.2d at 456. Here, the officers knew that Mitchell was wanted for aggravated assault and armed criminal action, both severe crimes sufficient to justify a fear that Mitchell "posed an immediate threat to the safety of the officers or [Johnson]". *Id.,* 490 U.S. at 396, 109 S.Ct. at 1871–72, 104 L.Ed.2d at 455. Additionally, the fact that Mitchell had just left her mother's home led to a reasonable surmise that Mitchell had heard from her mother that Ripley and Grob were looking for her, which in turn created a reasonable suspicion that Mitchell was "attempting to evade arrest by flight". *Id.* The suspect's traveling in a car further forced quick action. The totality of these circumstances entitled the officers to use a fair amount of force.

Taken separately or together, it was not objectively unreasonable for the officers to block Johnson's car and display their weapons. Roadblocks are not unreasonable *per se,* or else *Brower v. County of Inyo* would

not have been remanded for a determination of whether the roadblock was unreasonable. *See* 489 U.S. at 599–600, 109 S.Ct. at 1382–83, 103 L.Ed.2d at 637 (1989), *and on remand,* 884 F.2d 1316, 1318 (9th Cir.1989) (remanding to district court). Nor is an officer's pointing a gun during a valid stop unreasonable *per se.*[8] *See Edwards v. Giles,* 51 F.3d 155, 157 (8th Cir.1995) (finding no constitutional violation in officer's drawing gun and pointing it at plaintiff, where officer was not accused of attempting or intending to fire it) (dictum); *Wilkins v. May,* 872 F.2d 190, 194 (7th Cir.1989) ("[T]he action of a police officer in pointing a gun at a person is not, in and of itself, actionable...."), *cert. denied,* 493 U.S. 1026, 110 S.Ct. 733, 107 L.Ed.2d 752 (1990); *cf. Hinojosa v. City of Terrell, Texas,* 834 F.2d 1223, 1230 (5th Cir.1988) (holding that officer's display of gun, without more than a conditional threat to shoot if necessary, is unreasonable only if it is "so egregious as to be constitutionally excessive") (citation and internal quotes omitted), *cert. denied,* 493 U.S. 822, 110 S.Ct. 80, 107 L.Ed.2d 46 (1989). Nor were these actions, taken separately or together, unreasonable under the circumstances confronting Grob and Ripley. In the heat of the moment, and even after cool reflection, it is objectively reasonable to use a roadblock into which the suspect did not crash and to point weapons at, but not shoot, at suspects, of whom one was wanted for violent crimes.

■ Johnson's strongest argument is that it was objectively unreasonable for the officers to block her car and pull their weapons *because the officers were not identified by insignia of their authority.* Johnson contends that she would not have tried to flee

---

**8.** An opposite conclusion might result when an officer points a gun during an *in*valid stop. *Cf. McDonald ex rel. McDonald v. Haskins,* 966 F.2d 292, 294 (7th Cir.1992) (affirming denial of qualified immunity for officer's conduct during a lawful search of a home, in pointing his gun at a nine-year-old child's head and threatening to pull the trigger, when the child "posed no threat to the safety of [the officer] or any other police officer present, was not actively resisting arrest or attempting to evade arrest by fleeing, and was not engaged in any assaultive behavior toward [the officer] or any other officers", and "was neither under arrest nor suspected of committing

a crime, was not armed, and was not interfering or attempting to interfere with [the officers' search]."); *Black v. Stephens,* 662 F.2d 181, 188–89 & n. 5 (3d Cir.1981) (implying that stop was invalid, where on-duty officer unidentified as such pointed his revolver at suspect and threatened to shoot, with suspect's wife in direct line of fire, and where suspect had done nothing wrong), *cert. denied,* 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876, *and reh'g denied,* 456 U.S. 950, 102 S.Ct. 2022, 72 L.Ed.2d 475 (1982), *disagreed with on other grounds, Williams v. Butler,* 746 F.2d 431 (8th Cir.1984) (subsequent history omitted).

the roadblock had she known that her assailants were law enforcement personnel. The only reason she put her car in reverse was to escape what she thought was a carjacking. Under her reasoning, the roadblock and display of weapons were unreasonable because the officers failed to identify themselves and she crashed because of this omission. *Cf. Buckner*, 36 F.3d at 540 ("[A]n officer violates a clearly established right under *Brower* if he pulls his squad car onto a highway with knowledge or reason to know that an approaching [motorist] will not have time or the ability to stop *or otherwise safely avoid collision with the car*.") (emphasis added).

This argument is persuasive. A number of cases recognize the problems that occur when law enforcement personnel take official actions without identifying their authority.[9] In *Wilson v. Arkansas*, 514 U.S. ——, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), the Supreme Court announced that the common law principle of "knock and announce", i.e., absent extenuating circumstances law enforcement officers must knock and announce their identity and purpose before entering a home to perform a search or arrest, is part of the Fourth Amendment's inquiry into whether a search or seizure is objectively reasonable. *Wilson* rests on the assumption that citizens, even those who are guilty, will ordinarily comply with law enforcement officers once those officers identify themselves as such and state their purpose. Knocking and announcing can thus avoid needless damage

to the suspect's home as the officers perform their duties. *Id.*

■■■ The question before this Court is whether *Wilson* should be extended to seizures occurring outside the home. The Court holds that it should be: a seizure outside the home may be unreasonable because the officers involved were not identified or identifiable as such, and the seized person suffers injuries because of the officers' lack of identification. An argument does exists against extending *Wilson* outside the home because *Wilson* rests partially on a common law tradition regarding searches and seizures inside the home, a place historically recognized as deserving a great deal of privacy. *See id.*, 514 U.S. at —— ——, 115 S.Ct. at 1916–19, 131 L.Ed.2d at 980–94; *St. Hilaire*, 71 F.3d at 27 & n. 3 (applying *Wilson* only for the sake of argument to an officer's shooting of a suspect in his car); *U.S. v. Conley*, 911 F.Supp. 169, 172 (W.D.Pa.1995) (refusing to extend *Wilson* to an arrest made at suspect's business because *Wilson* was concerned with an arrest at a house, although not ruling out *Wilson*'s applicability to arrests in other circumstances at other commercial establishments). Nevertheless, *Wilson* also rests on the recognition that knocking and announcing helps to avoid needless property damage and bodily injury, 514 U.S. at —— ——, 115 S.Ct. at 1916–19, 131 L.Ed.2d at 981–84, and these dangers are present any time law enforcement officers try to use their authority without identifying that authority, in or out of the home.[10]

---

**9.** These cases are detailed in the previous discussion of *Hodari D.* The cases are listed here again only for convenience: *St. Hilaire*, 71 F.3d 20 (1st Cir.1995); *Carter v. Rogers*, 805 F.2d 1153 (4th Cir.1986); *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553 (1st Cir.1989); *Beran v. U.S.*, 759 F.Supp. 886 (D.D.C.1991); *Agresta v. Gillespie*, 158 Pa.Cmwlth. 230, 631 A.2d 772 (1993); *Stack v. State*, 534 N.E.2d 253 (Ind.Ct.App.1989); *Kyle v. City of New Orleans*, 342 So.2d 1257 (La.Ct. App.1977); *Sparks*, 64 Cal.App.3d 592, 134 Cal. Rptr. 684 (1976); *Celmer v. Quarberg*, 56 Wis.2d 581, 203 N.W.2d 45 (1973); *Grudt v. City of Los Angeles*, 2 Cal.3d 575, 86 Cal.Rptr. 465, 468 P.2d 825 (1970); *Poole v. City of Louisville*, 107 Ga. App. 305, 130 S.E.2d 157 (1963).

**10.** See the cases cited in the previous footnote and throughout this opinion. Defendants urge the Court to ignore cases such as *Black v. Ste-*

*phens* and *Gutierrez–Rodriguez* because they use tests other than *Graham v. Connor*'s test of objective reasonableness. *Id.*, 490 U.S. at 396–97, 109 S.Ct. at 1871–73, 104 L.Ed.2d at 455–56. This makes no sense because these cases found such behavior violated standards *higher* than objective reasonableness. *See Black v. Stephens*, 662 F.2d at 188 (" 'shock[ed] the conscience' "); *Gutierrez–Rodriguez*, 882 F.2d at 559 (" 're-flect[ed] a reckless or callous indifference to an individual's rights' "). *A fortiori* the officers' conduct was objectively unreasonable. *See McDonald v. Haskins*, 966 F.2d at 294 (affirming *Black v. Stephens*'s precedential and persuasive value in light of *Graham v. Connor*).

The state cases using a negligence standard, while not necessarily satisfying *Graham*'s test, nevertheless illustrate the foreseeable consequences when officers act without showing or declaring their authority.

The cases involving plainclothes officers and unmarked cars confirm that an officer's failure to identify himself can spark unreasonable consequences. Citizens confronted with unidentified officers brandishing weapons will often respond with fight, *e.g.*, *St. Hilaire, supra; Celmer, supra,* or, as in the present case, flight, *e.g., Gutierrez–Rodriguez, supra; Sparks, supra.* Both reactions are natural, understandable, and sometimes foreseeable. Both reactions often result in injury to the officers, the suspects, or innocent third parties. Both reactions are best avoided when possible. Accordingly, the Court makes no great leap to hold that an officer of the law can act objectively unreasonably by not showing or declaring his authority in some circumstances.

■ The fact that the knock and announce principle is relevant to the reasonableness of searches and seizures outside the home does not, however, mean that every seizure committed by unidentified officers is unreasonable *per se.* Rather, the officer's failure to declare or show his authority is thrown into the mix of *Graham*'s other factors, such as the officers' need for quick action, the severity of the crime at issue, the suspect's threat to the officers' or bystanders' safety, and whether the suspect was resisting arrest or attempting to flee. *Id.,* 490 U.S. at 396, 109 S.Ct. at 1871–72, 104 L.Ed.2d at 455.

■ In the present case, many factors favor the officers: Officer Ripley and Special Agent Grob had a high need for surprise; Johnson's passenger, Mitchell, was wanted on an outstanding state warrant for aggravated assault and armed criminal action; the officers had a reasonable suspicion that Johnson was aiding and abetting Mitchell's flight; and the officers likewise could have believed that Johnson was being forced to help Mitchell, and that their stopping the car would help Johnson. Only one factor, the officers' failure to identify themselves, goes in Johnson's favor. This is a close call, but a jury would have to decide whether the officers' actions were objectively reasonable. *See*

*Poole,* 130 S.E.2d at 159–61 (leaving question of recklessness to jury when driver had been injured during high-speed chase by unmarked car at night). Johnson could win at trial only if the jury determined the officers' failure to identify themselves appropriately was reckless, and thus a constitutional violation, *see Sellers ex rel. Sellers v. Baer,* 28 F.3d 895, 902–03 (8th Cir.1994) ("Gross negligence on the part of the officers ... is not actionable under *Bivens* or § 1983"), *cert. denied,* —— U.S. ——, 115 S.Ct. 739, 130 L.Ed.2d 641 (1995), but not if it was merely negligent, *cf. id.*

### 2. Pulling Johnson from the wreck

1. Justification

■ Officer Ripley had adequate justification to pull Johnson from her car. It is objectively reasonable for an officer to help a citizen from her car after it has overturned, regardless of the surrounding circumstances. This is just another community caretaking function. *See supra; Rideau,* 969 F.2d at 1574, *aff'g in relevant part* 949 F.2d at 720.

2. Implementation

■ However, an officer performing a community caretaking function is not completely privileged. *Cf. Rideau,* 969 F.2d at 1576 (holding in a community caretaking case: "Nor do we assert that a lawful detention is a license to frisk."). In the present case, Johnson seems to contend that Ripley pulled her out of her overturned car in a manner that caused or exacerbated her injuries, perhaps due to Ripley's animosity or suspicion of criminality.[11] Nevertheless, she has also testified at deposition that her injuries were caused by the accident itself. *See* Johnson Dep. at 53–54. Even if she sustained minor injuries due to Ripley's handling, minor roughness does not constitute a violation of Fourth Amendment rights. *See Edwards v. Giles,* 51 F.3d at 157. Additionally, under *Graham v. Connor,* Ripley's subjective motive or intent is irrelevant. Giving Johnson the benefit of the doubt, a reason-

---

11. At deposition, Johnson stated that she was "pulled" and "dragged" from her car. Johnson Dep. at 44. She stated that she could have crawled out on her own, and disparaged the opposing attorney's characterization of the officer's actions as being helpful. *Id.* at 45.

able juror could not find that Officer Ripley used unreasonable force in pulling Johnson from her car.

### 3. Handcuffing Johnson, laying her down in the street, and accompanying her to the hospital

1. Justification

The next question is whether Grob and Ripley were justified in handcuffing her, laying her down in the street, and accompanying her to the hospital. As a preliminary matter, Johnson cannot claim that it was objectively unreasonable for the officers to detain her at all: as the Court discusses above, the officers had a reasonable suspicion to detain Johnson on a *Terry* stop even before they saw Johnson try to escape.

However, Johnson protests not just being detained, but that she was detained with unreasonable force when she was handcuffed, laid down in the street, and accompanied to the hospital. The Court held above that these actions constituted an arrest. *See supra.* The officers did not have a warrant for her arrest, so the officers needed probable cause. *See Bloomfield,* 40 F.3d at 916. But the officers did not have probable cause when they set up the roadblock; they had only a reasonable suspicion of criminal activity, not probable cause. *See supra.* Therefore, the officers could have gained probable cause to arrest Johnson only from her reaction to the roadblock.

Johnson contends that her reactions to the roadblock could not create probable cause because the roadblock was unreasonable and thus unlawful. This an argument against using the fruit of the poisonous tree. Flight from a roadblock can convert a reasonable suspicion into probable cause. *See U.S. v. Holloway,* 962 F.2d 451, 461 (5th Cir.1992). But if the roadblock was reckless, then the officers should have known that Johnson's flight did not create probable cause. Even if the roadblock was only negligent, there is still a question for the jury as to whether Johnson's reaction, plus the facts the officers knew before Johnson fled, constituted probable cause, i.e., "evidence which would 'warrant a man

of reasonable caution in the belief' that a felony has been committed". *Wong Sun v. U.S.,* 371 U.S. 471, 479, 83 S.Ct. 407, 412–13, 9 L.Ed.2d 441, 450 (1963). A reasonable juror could find that a man of reasonable caution would have recognized that Johnson's flight either a flight from justice or a flight from unidentified armed robbers. *See People v. Mejia,* 198 A.D.2d 178, 604 N.Y.S.2d 75 (N.Y.App.Div.1993) (mem. op.) ("Defendant's re-entry into a building from which he had just emerged upon the appearance of an unmarked police vehicle did not justify the immediate pursuit by the police.") (citations omitted), *app. denied,* 83 N.Y.2d 855, 612 N.Y.S.2d 387, 634 N.E.2d 988 (N.Y.1994); *People v. Jaiman,* 169 A.D.2d 589, 565 N.Y.S.2d 13, 15 (N.Y.App. Div.) (mem. op.) ("Defendant's glance at an unmarked car and at police officers who were not in uniform, placement of his hand inside the waistband of his trousers and flight were ambiguous at best."), *app. denied,* 78 N.Y.2d 968, 574 N.Y.S.2d 947, 580 N.E.2d 419 (N.Y.1991).

Although the parties do not discuss the case of *U.S. v. Dawdy,* 46 F.3d 1427 (8th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 195, 133 L.Ed.2d 130 (1995), the Court anticipates that discussion of it would facilitate appellate review. In *Dawdy,* the Eighth Circuit held that "a defendant's response to even an invalid arrest or *Terry* stop may constitute independent grounds for arrest". *Id.* at 1431. Thus, *Dawdy* gives superficial support for the proposition that Ripley and Grob had probable cause after Johnson attempted to flee, the unreasonableness of their roadblock notwithstanding.

*Dawdy* should not dictate such a result here. First, the holding quoted above is dictum. The opinion itself notes that the holding was "an additional justification for Dawdy's arrest". *Id.* at 1430. Moreover, the *Dawdy* court explicitly found that the arrest of Dawdy was justified; thus, their discussion of a defendant's response to an invalid stop is dictum.

Second, and more important, *Dawdy* seems limited to its facts, facts which are absent from this case. In *Dawdy,* the Eighth Circuit found that the officers had

independent grounds to arrest Dawdy when he put up a brief struggle against attempts to handcuff him. *Id.* at 1431. The dissent explains that the majority to reflect the well-established rule that an officer has independent grounds for an arrest when the defendant "either fled at high rates of speed (*e.g.,* 115 m.p.h.), physically assaulted the officers, or shot at the officers". *Id.* at 1436 (Lay, J., dissenting).[12] Basically, *Dawdy*'s dictum is really intended to enforce *Hodari D.*'s policy that suspects should be deterred from fleeing or resisting law enforcement officers. *See Hodari D.,* 499 U.S. at 627, 111 S.Ct. at 1551, 113 L.Ed.2d at 697–98 ("[C]ompliance with police orders to stop should ... be encouraged.").

Thus understood, *Dawdy* provides only superficial support for the notion in this case that Grob and Ripley necessarily could gain probable cause as to Johnson even if the roadblock was objectively unreasonable. In *Dawdy,* the suspect must have known that he was being arrested by a police officer. *See id.* at 1428–29 (officer in squad car, flashing lights on top of car, other officers and a police dog joining the scene). Here, Johnson had no idea she was being stopped by law enforcement. This is not the situation *Dawdy* was crafted to control. Johnson's flight, far from being independent of the initial stop, was caused directly by the unreasonable method of arrest. Consequently, it is compatible with *Dawdy* to hold that in the event the jury finds the roadblock unreasonable, that it can, perhaps must, find that Johnson's decision to flee did not constitute independent grounds for her subsequent arrest.

2. Implementation

▆ Even if the officers lacked probable cause to effect this arrest, no reasonable juror could find that the officers used excessive force to implement it. Johnson admits that her injuries stem from the accident, not from later events. Johnson Dep. at 53–54. Handcuffing a person is not unreasonable *per se, cf. Foster v. Metropolitan Airports*

*Comm'n,* 914 F.2d 1076, 1082 (8th Cir.1990), and Johnson's testimony that her injuries stem from the accident precludes the possibility that she was injured while being handcuffed, *see id.* (noting that the extent or lack of injury is relevant to whether the force was reasonable). The same is true of her being laid in the street. *See Edwards v. Giles,* 51 F.3d 155, 157 (8th Cir.1995) (holding that even a minor injury does not rise to excessive force). And Johnson certainly suffered no injury by being accompanied in the ambulance by Special Agent Grob. Furthermore, nobody hit her. Johnson Dep. at 53–54. Therefore, no reasonable juror could find that the officers used excessive force to effect the arrest of Johnson after pulling her from her overturned car.

4. **Searching Johnson's purse**

The officers had no warrant to search Johnson's purse, but Grob did so anyhow. The lawfulness of Grob's search of Johnson's purse follows the lawfulness of Johnson's arrest. If Johnson's arrest was unlawful, the officers had no right to search Johnson's purse without a warrant.

▆ However, if the arrest was lawful, so was the search of her purse. Johnson was arrested after crashing her automobile. When law enforcement officers arrest a suspect in her vehicle, they may search the passenger compartment and any containers found therein for contraband or a weapon. *See U.S. v. Thompson,* 906 F.2d 1292, 1297–98 (8th Cir.), *cert. denied,* 498 U.S. 989, 111 S.Ct. 530, 112 L.Ed.2d 540 (1990). Although Johnson's purse was searched while she was traveled to the hospital, her purse had been in the car with Johnson and was seized at the scene of the accident by Special Agent Grob. Grob Decl. ¶ 14. It is not clear whether Johnson or Mitchell were handcuffed in the ambulance, but even if they were, Johnson's purse, and any weapon it might have contained, was still theoretically accessible to either Johnson or Mitchell. *Cf. U.S. v.*

---

**12.** Comparison of the *Dawdy* majority and dissent thus shows that on this point they did not disagree about the content of the legal rule, but rather about the factual question of whether Dawdy's struggle was factually independent from the underlying stop. *See Dawdy,* 46 F.3d at 1436–37. This observation allows the Court to rely on the dissent to explain the majority's holding.

*Mitchell,* 64 F.3d 1105, 1110–11 (7th Cir. 1995) (holding that arrestee's being handcuffed did not destroy officer's justification for search of briefcase incident to arrest). Under these facts, if the arrest was lawful, Grob was entitled to search Johnson's purse, whether at the scene of the accident or in the ambulance. *See Sparks,* 134 Cal.Rptr. at 688 (finding proximate cause between plainclothes officers' failure to declare or show their authority to citizen and injuries to third party when suspect fled the officers).

### D. Proximate Cause

The Court takes as given on the preceding facts that Grob and Ripley's failure to identify themselves as officers of the law was a proximate cause of Johnson's injuries; certainly Defendants do not argue otherwise. At the very best, the issue would be for a jury to determine whether Johnson actually heard Ripley shout "Police!", and fled in response.

### E. Qualified Immunity

Having found that a jury could find that some of the above seizures violated Johnson's constitutional rights, the Court must next determine whether the officers are nevertheless protected by qualified immunity.

■ "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982), *quoted in Sellers ex rel. Sellers v. Baer,* 28 F.3d 895, 899 (8th Cir.1994), *cert. denied,* ── U.S. ──, 115 S.Ct. 739, 130 L.Ed.2d 641 (1995). "Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410 (footnote omitted).

■ To avoid qualified immunity, the asserted rights must have been clearly established at the time as *constitutional* rights, and not just as rights arising under the common law, administrative regulations, or even codified statutes. *See Davis v. Scherer,* 468 U.S. 183, 193–97, 104 S.Ct. 3012, 3018–20, 82 L.Ed.2d 139, 148–51 (1984); *accord St. Hilaire,* 71 F.3d at 27–28.

■ Therefore, Johnson's Fourth Amendment claims against the officers are barred by qualified immunity. The Court's decisions above rely on three constitutional principles: (1) "[A]n officer violates a clearly established right under *Brower* if he pulls his squad car onto a highway with knowledge or reason to know that an approaching [motorist] will not have time or the ability to stop *or otherwise safely avoid collision with the car.*", *Buckner,* 36 F.3d at 540 (emphasis added); *see Brower,* 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628; (2) a person is seized by law enforcement when she flees from unidentified plainclothes law enforcement officers because she fears they are not law enforcement and mean her violence, *see supra;* and (3) a seizure outside the home may be objectively unreasonable when the seized person suffers injuries because the officers were not identified or identifiable as such, *see supra; cf. Wilson,* 514 U.S. ──, 115 S.Ct. 1914, 131 L.Ed.2d 976. All three principles are necessary to the Court's conclusion; none is sufficient. The events out of which this dispute arises occurred in 1992, at least three years after the *Brower* decision was decided in 1989, but also three years before *Wilson* was decided in 1995. Pre–*Wilson* cases are barred by qualified immunity in states and federal Circuits that had not held before *Wilson* that the "knock and announce" rule had constitutional status, because *Wilson* was the first Supreme Court case to hold so. *St. Hilaire,* 71 F.3d at 27–28. This conclusion applies *a fortiori* in the present case, which is the first to explicitly extend *Wilson* to searches and seizures outside the home. Accordingly, Ms. Johnson's constitutional claims are barred by qualified immunity.

### IV. STAY OF DISCOVERY

On October 19, 1995, the Court stayed discovery in this dispute pending its resolu-

tion of Defendants' claims of qualified immunity, pursuant to *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 411 (1982) ("Until this threshold immunity question is resolved, discovery should not be allowed."). Now that the Court has resolved the issue of qualified immunity, and the remaining counts do not involve questions of immunity, it is appropriate to lift the stay.

### V. STATE LAW CLAIMS

#### A. Federal Tort Claims Act

 Johnson's state law claims of assault, battery, false arrest, and malicious prosecution sound in tort. Under the Federal Tort Claims Act, Johnson's sole remedy on such claims is against the United States of America. 28 U.S.C. § 2679(b); *Wollman v. Gross*, 637 F.2d 544, 547 (8th Cir.1980), *cert. denied*, 454 U.S. 893, 102 S.Ct. 389, 70 L.Ed.2d 207 (1981). Accordingly, the Court will dismiss Grob and Ripley from this action, leaving only claims against the United States. These claims must be decided by the Court, not a jury. *See* 28 U.S.C. §§ 2402, 1346(a)(1); *Engle v. Mecke*, 24 F.3d 133, 135 (10th Cir.1994). Punitive damages will be unavailable. 28 U.S.C. § 2674.

#### B. Assault, Battery, False Imprisonment, and Malicious Prosecution

Subject to the above limitations, Johnson may continue her lawsuit on these tort claims. The Court would prefer further briefing on these issues, especially in light of its rulings in this opinion, and will therefore defer ruling on them right now. The United States may, if it so desires, renew its motion and rely solely on the briefs already submitted, especially for its motion to dismiss the charge of malicious prosecution, there appearing to be no evidence that anybody associated with the United States instigated or encouraged her prosecution for traffic violations.

### ORDER

For the foregoing reasons, it is hereby

ORDERED that Count I, which alleges violations of Plaintiff Johnson's Fourth Amendment rights be DISMISSED on the grounds of qualified immunity. It is further

ORDERED that the stay on discovery is LIFTED.